Robert **REICH**,\* Secretary of Labor, United States Department of Labor, Appellee,

v.

**CONAGRA, INC.**, doing business as Northwest Fabrics & Crafts, Appellant.

No. 92–1797.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1992.

Decided March 12, 1993.

pursuant to Fed.R.App.P. 43(c).

Eugene F. DeShazo, Kansas City, MO, argued (Louis A. Huber, III, on the brief), for appellant.

Paul F. Frieden, U.S. Dept. of Labor, Washington, DC, argued (William J. Stone, on the brief), for appellee.

Before MAGILL and BEAM, Circuit Judges, and LARSON,** Senior District Judge.

BEAM, Circuit Judge.

This action was brought by the Secretary of Labor to enjoin ConAgra, Inc., doing business as Northwest Fabrics & Crafts (NWF & C), from violating certain provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* (the Act). Specifically, the Secretary alleges that the NWF & C store in Davenport, Iowa, has violated and is violating the Act by refusing to keep records of the time its employees spend making garments and crafts at home as part of NWF & C's display model program. After discovery, the parties stipulated to most of the facts and filed cross motions for summary judgment. ConAgra appeals the district court's entry of summary judgment in favor of the Secretary.

## I.  BACKGROUND

The stipulated facts are fully set forth in the district court's opinion. *See Martin v. ConAgra, Inc.,* 784 F.Supp. 1394, 1396–97 (S.D.Iowa 1992). We repeat only those facts necessary for our decision. NWF & C is a multi-state chain of retail stores that sells fabrics, craft items, and related materials and supplies. Although NWF & C does not sell completed garments or crafts, it places display models of finished items throughout its stores in order to show customers possible end-uses of its products and thereby to increase sales of the compo-

** The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

nent supplies, patterns, and kits. These model garments and crafts are made by NWF & C employees at their homes as part of the display model program.

Under the display model program, NWF & C supplies employees who wish to make garments or crafts at home with the necessary materials free of charge. In return, each participant agrees to complete a garment or craft within a specified time, generally two weeks, and to allow the store to display the finished item for approximately six weeks. At the end of the six-week display period, the participant is allowed to take the display model home. If the model is not completed on time, however, the participant must pay NWF & C the employee-discount price for the materials and supplies used.[1]

Patterns, supplies, and kits for display models are ordinarily selected by the store manager, but employees are allowed to substitute patterns or fabrics that are acceptable to the manager. NWF & C considers a garment or craft acceptable if it will attract or inspire customers to buy NWF & C's inventory. The program is flexible in practice and NWF & C tries to accommodate employees' special needs.

The display model program is conducted on a voluntary basis and is completely unrelated to employment opportunities with NWF & C. Although NWF & C benefits from employing salespeople who are knowledgeable about and interested in sewing or making crafts, those who choose not to participate in the program experience no adverse effects on their employment or on their opportunity for advancement. In fact, the second highest paid employee at the Davenport store does not participate in the program.

NWF & C's sales force is comprised mainly of part-time employees whose primary vocations lie elsewhere. Most NWF & C employees are homemakers, raise children, or go to school. NWF & C generally employs people who have an interest in sewing and other crafts. Participants in the display model program report that they have made prom dresses, wedding and confirmation dresses, and have clothed their families through the program. The Secretary described the benefits of display model programs generally in his enforcement position:

> Such display garment programs are considered beneficial by employers and employees. The employees find the program beneficial because many of them are enthusiastic home sewers. The display garment programs are of advantage to consumers because they can see finished products. The employers are pleased since they can display model garments—which are constructed with personal care—to their customers.

53 Fed.Reg. 45706, 45719 (Nov. 10, 1988). NWF & C filed several employee affidavits with its motion for summary judgment that confirm its employees' enthusiasm for the program.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo, applying the same strict standard as the district court. *Watson v. Jones*, 980 F.2d 1165, 1166 (8th Cir.1992). Therefore, we are required to view all of the evidence in the light most favorable to the nonmoving party and to give that party the benefit of all reasonable inferences to be drawn from the facts disclosed in the pleadings. *Id.* Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.;* Fed.R.Civ.P. 56(c).

In order to withstand a motion for summary judgment, the nonmovant must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The

---

1. NWF & C's Operating Policy and Procedure manual provides that the employee must also pay for the materials when the store manager determines that a project is too poorly constructed to display. The Davenport store manager testified at her deposition, however, that this situation has never arisen because she permits employees to remedy unsatisfactory work or to display items in a way that conceals flaws.

nonmovant need not prove in its favor each issue of material fact. All that is required is sufficient evidence supporting a material factual dispute to require resolution by a trier of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Unigroup, Inc. v. O'Rourke Storage & Transfer Co.,* 980 F.2d 1217, 1220 (8th Cir.1992).

The issue in this case is whether the employer-employee relationship extends to participation in the display model program.[2] The Secretary brought suit under section 15(a)(5) of the Act which proscribes violations of section 11(c), the recordkeeping provision of the Act. *See* 29 U.S.C. §§ 211(c), 215(a)(5). If no employer-employee relationship exists with regard to the display model program, the Act is inapplicable to the disputed conduct.

■ ConAgra argues that summary judgment is inappropriate in this case because the district court mistakenly placed the burden of proving the absence of an employer-employee relationship on it. The district court examined the stipulated facts and affidavits as if ConAgra were claiming an exemption from the Act. "[W]hen an employer contends it is exempt from the Act, the employer 'has the burden of establishing the exemption clearly and affirmatively.'" *Martin,* 784 F.Supp. at 1397 (quoting *Donovan v. Williams Chem. Co., Inc.,* 682 F.2d 185, 191 (8th Cir.1982)). The district court granted summary judgment based on its deference to the Secretary's interpretation of the Act[3] and its conclusion that ConAgra "has not clearly and affirmatively shown that it is exempt from the Act." *Id.* at 1397–98.

ConAgra correctly points out that the Secretary has the burden of proof on the threshold issue of whether an employer-employee relationship exists with regard to the activities in question. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686–87, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946); *Marshall v. Truman Arnold Distrib. Co., Inc.,* 640 F.2d 906, 911 (8th Cir.1981). ConAgra's entire defense to the Secretary's claim is based on the premise that no employer-employee relationship exists with regard to the display model program. Thus, the Secretary properly has the burden to prove that the Act is apposite to this case. Since ConAgra's defense is based on inapplicability of the Act, and not on an exemption from the Act, the district court employed the wrong burden of proof.

■ While the Secretary concedes that the district court misstated the burden of proof in its opinion, he argues that this error is rendered harmless by the court's substantive reasoning on the merits. The Secretary contends that the burden of proof only effects the outcome of a case when the evidence is in equipoise and that the evidence in this case weighs so heavily in his favor that the district court had to arrive at its decision independent of any consideration of where the burden of proof lies. We are not so confident that the district court would have reached the same conclusion using the proper burden of proof. In any event, after a de novo review of the evidence, we cannot find that the Secretary is entitled to summary judgment as a matter of law.

The language of the Act provides little guidance in delineating the contours of the employer-employee relationship.[4] *See Mar-*

2. There is no question that participants in the display model program are employed by NWF & C at its retail stores. The parties hotly dispute whether home sewing and crafting under the display model program constitutes work under the Act, giving rise to a separate employer-employee relationship.

3. We recognize that the Secretary of Labor's enforcement position represents a body of experience and informed judgment which may offer guidance to the court, but it is not entitled to the same deference as regulations promulgated by the Secretary under the Act. *See Martin v.*

*OSHRC,* —— U.S. ——, ——, 111 S.Ct. 1171, 1179, 113 L.Ed.2d 117 (1991) (case arising under OSHA, 29 U.S.C. §§ 651 *et seq.*); *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944) (limited deference to the Administrator of the Wage and Hour Division of the Department of Labor).

4. "Employee" is defined by the Act as "any individual employed by an employer." 29 U.S.C. § 3(e)(1). As the Supreme Court noted in an ERISA case, this definition is "completely circular and explains nothing." *Nationwide Mutual Ins. Co. v. Darden,* —— U.S. ——, ——, 112 S.Ct.

*shall,* 640 F.2d at 908. The employer-employee relationship does not lend itself to rigid per se definitions, but depends "upon the circumstances of the whole activity." *Id.* (citation omitted). The Supreme Court, however, has fashioned guidelines for determining whether activities are covered by the Act. In *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949 (1944) the Court explained that the Act applies to "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Id.* at 598, 64 S.Ct. at 703. *See also Armour & Co. v. Wantock,* 323 U.S. 126, 132–33, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944) (emphasizing that the requirement of exertion is contextual and finding that idle time spent by fireguards subject to call is working time). ConAgra argues that, on the record before the district court, the Secretary failed to demonstrate that the activities are controlled by NWF & C or that the sewing and crafting primarily benefits NWF & C. We agree.

Viewing the evidence in the light most favorable to ConAgra, we find that participants in the NWF & C display model program retain a sufficient amount of control over their activities to create a genuine issue of fact regarding whether their participation is employment under the Act. An employee's decision to participate in the program is completely voluntary. Participation is not a job requirement and has no effect on wages, hours, opportunity for advancement, or other terms and conditions of employment. Even after an employee has undertaken to make a display item, the employee may decide, without consulting NWF & C, to discontinue the project and simply pay the employee-discount price for any materials used. The Secretary admits that in practice the participant is entitled to

substitute patterns or fabrics for those chosen by the store manager, and that NWF & C attempts to accommodate the special needs of participants. On occasion the employee who checked out the materials for the display item is not the person who actually completes the project. At least one participant reports that her mother and daughter often make display items with materials that she has checked out of the store.[5] Appellant's App. at 37. Based on the stipulated facts and affidavits in the record, the Secretary has not demonstrated sufficient control by NWF & C over the program to establish that an employer-employee relationship exists as a matter of law.

The Secretary has also failed to show that NWF & C is the *primary* beneficiary of the sewing and crafting performed by display model program participants. Although NWF & C undoubtedly benefits from increased sales attributable to use of display models and from having its employees familiarize themselves with NWF & C's products by working with them, many activities that benefit employers are not considered employment under the Act. *See, e.g., Walling v. Portland Terminal Co.,* 330 U.S. 148, 153, 67 S.Ct. 639, 641, 91 L.Ed. 809 (1947) (railroad training program is not employment where railroad receives no immediate advantage); *Leone v. Mobil Oil Corp.,* 523 F.2d 1153, 1163 (D.C.Cir. 1975) (employee participation in OSHA inspections does not primarily benefit employer). Participants in the display model program benefit from acquiring ownership of the finished products after the display period. The program also enables participants to experiment with projects they might not undertake if they had to pay for the materials they use. ConAgra has submitted numerous affidavits of employees who state that they consider the program a great benefit. The record does not reveal facts that would lead us to conclude that

1344, 1348, 117 L.Ed.2d 581 (1992). "'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "'Employ' includes to suffer or permit to work." *Id.* at § 203(g).

5. While the store's use of an intermediary to employ workers would not insulate the store from the provisions of the Act, we cannot find that relatives of employees are "as much an integrated part of the company's retailing operation as the [employees] themselves." *Marshall,* 640 F.2d at 909 (internal quotation omitted).

NWF & C is the primary beneficiary of the display model program.

## III. CONCLUSION

 For the reasons discussed above, we reverse the decision of the district court granting summary judgment to the Secretary of Labor and remand for further proceedings in accordance with this opinion.[6]

---

**6.** ConAgra argues that the district court also erred in denying summary judgment in its favor. A denial of summary judgment is not a final order and is not appealable. *Wright v. South Ark. Regional Health Ctr., Inc.,* 800 F.2d 199, 202 (8th Cir.1986). Accordingly, we will not address the issue. However, the district court may wish to revisit its denial of ConAgra's summary judgment motion on remand.