In re Richard Allen UNRUH, Debtor.

Ione Rasmussen, Plaintiff,

v.

Richard Allen Unruh, Defendant.

Bankruptcy No. 01–30992.
Adversary No. 01–3094.

United States Bankruptcy Court,
D. Minnesota.

May 8, 2002.

Joan M. Schulkers, Borman & Schulkers PLLP, Minneapolis, MN, for plaintiff.

Michael J. McNamara, Henderson, Howard, Pawluk, Brooklyn Center, MN, for defendant.

### ORDER GRANTING SUMMARY JUDGMENT

DENNIS D. O'BRIEN, Bankruptcy Judge.

A hearing was held in this matter on March 14, 2002, on the plaintiff's motion for summary judgment. Joan M. Schulkers appeared on behalf of the plaintiff, Ione Rasmussen, and Michael J. McNamara appeared on behalf of the defendant, debtor Richard Allen Unruh. At that time the defendant, having retained counsel at the final hour, on the record requested a continuance and made his cross motion for summary judgment. The Court, after hearing the arguments of counsel on the motion for a continuance and on the merits of the cross motions for summary judgment, granted the defendant thirty days to file a supplemental response and the plaintiff ten days thereafter to file a reply.

Based upon all the files, records, and proceedings herein, and particularly based upon the arguments of counsel at the hearing and upon the briefs filed thereafter, as well as the exhibits referenced in and included with the pleadings, the Court now makes the following order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

### I. Introduction

Richard Allen Unruh filed a Chapter 7 bankruptcy petition on March 8, 2001. On June 8, 2001, Ione Rasmussen filed the above captioned complaint, seeking to have the defendant's debt to her determined nondischargeable pursuant to 11 U.S.C. § 523(a)(14) for the fact of the debt having been incurred to pay a nondischargeable tax, and to have Unruh's discharge denied entirely pursuant to 11 U.S.C. § 727(a)(4)(A) for making a false oath in connection with the filing of his bankruptcy petition.

On July 2, 2001, Unruh filed an answer, and on August 16, 2001, the parties appeared for a scheduling conference, Unruh representing himself. On August 20, 2001, the Court issued a scheduling order consistent with the discovery deadlines discussed at the conference. That order imposed a complete discovery deadline of November 14, 2001. Rasmussen brought a motion to compel discovery on September 5, 2001, and a hearing was held on that matter on October 3, 2001. Unruh did not appear at the hearing on the motion to compel, and the Court granted the motion. The Court's order of October 4, 2001, ordered Unruh to sign his responses under oath and awarded Rasmussen costs and attorneys' fees and, importantly, warned Unruh that failure to comply with the order would result in the Court striking the answer and entering default judgment against Unruh.[1]

---

**1.** Unruh subsequently filed a letter suggesting that he did not receive notice of the hearing on the plaintiff's motion to compel, which contention remains unsupported by the rec-

On October 29, 2001, counsel for Rasmussen filed an affidavit attesting to Unruh's continued noncompliance with the Court's scheduling order and the order granting the motion to compel. The Court issued an order to show cause on November 7, 2001, and held a hearing regarding the same on November 26, 2001. This time, Unruh appeared. In an amended scheduling order dated November 27, 2001, the Court extended the discovery period sixty days and imposed a complete discovery deadline of January 25, 2002. Unruh filed a letter, on December 12, 2001, complaining about the discovery process and expressing his concern that he was being harassed and taken advantage of for his *pro se* condition. Nevertheless, he apparently signed releases as requested by Rasmussen and appeared for his deposition.

Finally, on February 22, 2002, Rasmussen filed a motion for summary judgment and the same was scheduled to be heard by the Court on March 14, 2002. On March 13, 2002, Unruh filed a motion for a continuance and cross motion for summary judgment, this time represented by counsel. As stated above, the matter was argued by counsel for both parties before the Court on March 14, 2002, both as to the requested continuance and on the merits of the cross motions for summary judgment, and the Court concluded by granting Unruh thirty days to supplement his response with ten days thereafter reserved for Rasmussen to reply, the matter to be taken under advisement thereafter. The Court indicated at the hearing that resolution of the cross motions for summary judgment would be either that summary judgment would be granted or the matter would be set on for trial. The Court reit-

erated that the discovery period was closed.

## II. Summary Judgment Standard

The standard for granting or denying a motion for summary judgment is well settled. Summary judgment is appropriate in a case in which the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *U.S. ex rel. Gebert v. Transport Admin. Serv.*, 260 F.3d 909, 911–12 (8th Cir.2001); see also Fed. R. Bankr.P. 7056 (making Fed.R.Civ.P. 56 applicable in adversary proceedings in bankruptcy); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir.1998).

"Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Minnesota Trust Co. of Austin v. Yanke (In re Yanke)*, 230 B.R. 374, 376 (8th Cir. BAP 1999).

"In order to withstand a motion for summary judgment, the nonmovant must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial." *See Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359–60 (8th Cir. 1993) quoting *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. "The nonvovant need not

ord. The Court presumes that the event that prompted his untimely response was his receipt of the order granting the motion.

prove in its favor each issue of material fact. All that is required is sufficient evidence supporting a material factual dispute to require resolution by a trier of fact." *See Reich,* 987 F.2d at 1359–60, quoting *Liberty Lobby,* 477 U.S. at 257, 106 S.Ct. 2505; *Unigroup, Inc. v. O'Rourke Storage & Transfer Co.,* 980 F.2d 1217, 1220 (8th Cir.1992).

"Upon a motion for summary judgment, the initial burden of proof is on the movant to demonstrate 'that there is an absence of evidence to support the nonmoving party's case.'" *See Celotex,* 477 U.S. at 325, 106 S.Ct. 2548; *Ries v. Wintz Properties, Inc., et al (In re Wintz Cos).,* 230 B.R. 848, 858 (8th Cir. BAP 1999). "Once met, the burden shifts to the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.;* cited in *Jafarpour v. Shahrokhi (In re Shahrokhi),* 266 B.R. 702, 706–07 (8th Cir. BAP 2001).

The facts in this case are beyond dispute. Though Unruh asserts otherwise, his contentions are unsupported by the record. Indeed, at the hearing on these cross motions on March 14, 2002, when Unruh sought a continuance, his proffered alternative to a continuance was to rely on the record developed by Rasmussen. Unruh made the argument that the plaintiff's own characterization of the facts "held no legal water" under sections 523(a)(14) and 727(a)(4)(A). The Court disagreed, but nevertheless granted Unruh an additional thirty days to supplement the record. He has done so, but only with more of the same: bare attestations inconsistent with the evidence, indeed mostly objective evidence, compiled by Rasmussen, and largely irrelevant argument. There is no genuine issue of material fact remaining in this case to be determined at a trial. No reasonable factfinder could find otherwise.

### III. Factual Findings

The record, including bank statements, IRS statements, Rasmussen's canceled check, affidavits, Unruh's responses to interrogatories, and depositions, including those of the parties and of others close to the parties, unequivocally tell the following factual story. Unruh's additions to this scenario are included where undisputed by Rasmussen or otherwise persuasive or consistent with the record. His assertions to the contrary are unfounded, antithetical to the otherwise overwhelming consistency of the reliable record, and generally not credible.

Unruh had a long term domestic partnership relationship with Rasmussen's son Brian for many years. During the life of the relationship, Unruh repeatedly failed to file tax returns on time and was repeatedly assessed for back taxes and penalties, including income and self-employment taxes for the tax years at issue in this matter, 1993, 1994, and 1995. Unruh operated, and at least at the time of filing continued to operate, a hair salon known as Uptown Hair Concepts. Over the years, Unruh may have provided discounted or gratuitous services and favors through his business to Brian, Ione Rasmussen herself, and other related persons, through the salon business or otherwise. Indeed, as domestic partners Unruh and Brian cohabitated, in fact bought a home together, and apparently shared expenses or at least Brian apparently enjoyed some

measure of gratuitous financial support from Unruh.

In August, 1996, while the domestic partnership continued, Unruh contacted Rasmussen. He informed her that he had been assessed taxes in the amount of $20,000. Perhaps he mentioned or perhaps she otherwise knew that Unruh and Brian were planning to buy a home and could not qualify to do so with the back taxes owing. That fact, to the extent it may be true, is irrelevant. On August 10, 1996, Rasmussen wrote a check to Unruh for $20,000, and the check stated "loan process" in the memo portion of the check. Rasmussen had made a loan in 1994 to Unruh in the amount of $4,000 which he had repaid promptly.

Unruh's bank statement shows the $20,000 being deposited into his account on August 12, 1996, and creating a total balance in the account of $24,181.15. On August 16, 1996, the IRS received payment from Unruh in the amount of $22,230.00. That payment cleared Unruh's account on August 20, 1996.

Of the $20,000 Unruh borrowed from Rasmussen, $16,424 was paid against self employment taxes due for tax years 1993, 1994, and 1995. The loan proceeds also paid approximately $2,619 in penalties and interest on Unruh's self employment tax for those years. The remainder was first applied to Unruh's income tax due for the same years. In 1993, the IRS audit concluded that Unruh was in negligent or intentional disregard of its rules and regulations. Unruh consistently failed to file his returns and make tax payments as due in a timely manner in 1993, 1994, 1995, and since, through 2000. The IRS has assessed penalties and interest and filed tax liens against him year after year. Unruh made three payments on the loan to Rasmussen in the months October, November, and December, 1996, for a total of $5,000.

At some time in 1999, the relationship between Unruh and Brian ended with Brian's departure from the home they shared. Subsequently, still in 1999, Unruh sold the home and Brian sued Unruh for the proceeds from the sale and for other monies. On December 22, 1999, Brian Rasmussen and Unruh executed a settlement agreement resolving the issue of the sale proceeds and the pending litigation between them. The agreement does not mention the plaintiff here, Ione Rasmussen, nor Unruh's debt to her, and she did not sign the settlement agreement.

Somewhere around this time, late 1999, Unruh began gifting many of his possessions. He continued making gifts throughout the year prior to and up until his filing bankruptcy on March 8, 2001. Rasmussen does not argue that Unruh was attempting to conceal his assets. Rather, Rasmussen concedes that the transfers may have been genuine gifts. Some of the items Unruh disposed of in this manner during the preference periods or when he was already likely insolvent were of little and even perhaps no value, while others were probably highly valuable.

Unruh gave away at least the following items: mantel clock circa 1920 with matching candlesticks, wardrobe, dining table and chairs, dresser, gratuitous cash payments of $400 per month from autumn of 1999 through November 2000, Orretors crystal bowl, antique ruby glassware, Henredon secretary and table, diamond ring, oil paintings, and at least ten collectible Department 56 village pieces ranging in secondary market value from $50 to $1,450 each. In his deposition, Unruh admitted to making these gifts, many of them in late 2000.

Since making the loan in 1996, Rasmussen purportedly made requests of Unruh for repayment from time to time. On

February 16, 2000, Rasmussen wrote to Unruh requesting repayment of the $15,000 balance and received no reply. On December 1, 2000, Rasmussen commenced an action in state court seeking to recover on the debt. Unruh filed his bankruptcy petition on March 8, 2001, apparently just prior to and in response to Rasmussen bringing a motion to compel discovery in the state court action.

Unruh's petition and schedules contain some glaring omissions. Unruh's Schedule B entry for item 27, machinery, fixtures, equipment and supplies used in business, is $1,000 identified as, simply, "equipment used in business (hairstyling)." The entry does not identify the name or location of the business and nowhere else in the petition and schedules is Unruh's salon fully described or otherwise accurately represented. Item 26, office equipment, furnishings, and supplies, and item 28, inventory, are marked "none." However, Unruh owned, as the sole proprietor of Uptown Hair Concepts, a collection of business-related assets far in excess of what could reasonably be deemed to have been intended by Unruh's entry in item 27, including: styling chairs, hair dryers, seating benches, paintings, a telephone system, an electronic cash register, coffee service equipment, $250–$300 salon inventory, and other supplies.

In Schedule I and his Statement of Financial Affairs, Unruh reported his monthly gross income, including wages and rent collected from other stylists, as $4,000. His bank statements from his checking account,[2] however, reflect average monthly deposits of more than $8,000. Consistent with the higher amount is Unruh's recent federal tax returns, which indicate gross revenues of $89,958 in 1999, and $98,000 in 2000. With Unruh's monthly business expenses not exceeding $850 plus the costs of

laundering supplies, coffee, tea and candies, even a computation extremely generous in Unruh's favor would render his scheduled gross income understated by at least sixty percent.

Unruh's Schedule B, item 4, household goods and furnishings, provides "household goods, no single item exceeds $425 in value," with a total market valuation of $1800. Schedule B, item 5, books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles, is marked "none." In fact, Unruh owned, and admitted in his deposition to still having in his possession, numerous items that fit the form B5 definition, regardless of value, including: 4 oil paintings, 19 Danbury Mint porcelain dolls, a Byer's Christmas collection, 74 Department 56 village pieces, and as many as 100 Department 56 ornaments. A secondary market collectors price guide values 72 of the Department 56 village pieces at $4,38/ total. Even if the "Green Book" price guide is not in fact relied upon by collectors of that product and even if the values quoted therein are exceedingly optimistic, the value of all of these collections cumulatively is not strictly nominal.

Unruh's petition and schedules also contain some substantial misstatements. On March 8, 2001, Unruh's bank statement reflects a balance of $4,161.02. For the week prior to filing, though it is of no consequence, Unruh's balance was $4,098.59 at its lowest and $5287.63 at its highest. On his petition, Unruh listed his account balance as just $200.

Finally, Unruh double counted his expenses for a truck and insurance on it by claiming it both as a business deduction from his gross income on his 2000 federal tax return and as a personal expense as

---

**2.** The account noted was singly Unruh's business and personal checking account.

reflected in Schedule J of his bankruptcy petition.

On June 26, 2001, Unruh amended Schedule B to list a Baldwin grand piano valued at $20,000, and amended Schedule C to claim an exemption of $8,375 in the piano. Unruh did not and has not made any other amendments to his schedules, in spite of numerous contradictions revealed by his discovery responses and deposition, and by the depositions of his family members and friends who expressed and otherwise corroborated the true state of his financial affairs, possessions, and transfers.

## IV. Discussion

### Denial of Discharge Under 11 U.S.C. § 727(a)(4)(A)

Section 727(a)(4)(A) provides:

(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account.

*See* 11 U.S.C. § 727(a)(4)(A).

■■■ "For such a false oath or account to bar a discharge, the false statement must be both material and made with intent." *See Korte v. United States Internal Revenue Service (In re Korte)*, 262 B.R. 464, 474 (8th Cir. BAP 2001); citing *Mertz v. Rott*, 955 F.2d 596, 597–98 (8th Cir. 1992), *Palatine Nat'l Bank v. Olson (In re Olson)*, 916 F.2d 481, 483–84 (8th Cir. 1990); *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir.1984). "The question of a debtor's 'knowledge and intent under § 727(a)(4) is a matter of fact.'" *See Cepelak v. Sears (In re Sears)*, 246 B.R. 341, 347 (8th Cir. BAP 2000); citing *Olson*, 916 F.2d at 484. "Intent can be established by circumstantial evidence, and statements made with reckless indifference to the truth are regarded as intentionally

false." *See Korte*, 262 B.R. at 474; citing *Golden Star Tire, Inc. v. Smith (In re Smith)*, 161 B.R. 989, 992 (Bankr.E.D.Ark. 1993).

■■■ "To merit denial of discharge, a debtor's misrepresentation or omission must be material." *See Sears*, 246 B.R. at 347, citing *Olson*, 916 F.2d at 484. "The threshold to materiality is fairly low: 'The subject matter of a false oath is material, and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *See Sears*, 246 B.R. at 347, citing *Chalik*, 748 F.2d at 618; *Olson*, 916 F.2d at 484; *Mertz*, 955 F.2d at 598. "An omission of a relatively modest asset will merit denial of discharge, if done with knowledge and fraudulent intent." *See Sears*, 246 B.R. at 347, citing *Mertz*, 955 F.2d at 598.

■■■ At the conclusion of the hearing in this matter, the Court noted that Unruh had offered no meaningful explanation of the complete omission from his schedules of his interest in a business and its equipment, inventory and supplies, and in personal collections; that Unruh had failed to account for the discrepancies between the scheduled value and the actual value of his assets and expenses; and that Unruh failed to explain the complete omission from his statement of financial affairs the numerous transfers of his assets within the year prior to his bankruptcy filing.

The Court unequivocally stated that the record of omissions and discrepancies demonstrated by the plaintiff cumulatively provided a strong basis, without explanation, and certainly more than a preponderance, for finding that Unruh made a false oath in connection with the filing of his bankruptcy case and essentially committed

a fraud upon the court. Several weeks and a few briefs later, the Court finds the situation unchanged. There is an abundant record of reliable evidence before the Court, including Unruh's own deposition testimony and verified responses in discovery, from which it can only find that Unruh's omissions and misstatements were both intentional, or at least in reckless disregard to the truth, and material.

As to his intentions, Unruh simply has no legitimate explanation for his misstatements and omissions other than, for example, the "vagaries of the salon business." Unruh seems to claim that he had altruistic intentions in disposing of his possessions and, the Court presumes to understand, that he was therefore not required to disclose those transfers. He also appears to insist that Rasmussen's objection to discharge is in fact fueled by a motive unrelated to the elements of § 727(a)(4)(A), that is, ill personal feelings and resentments between Unruh and Rasmussen's son and the unhappy demise of their former intimate relationship. That may or may not be true, but it is both unsupported by the record and irrelevant.

█ Unruh claims that "the most that can be said about [his] Schedule B entries is that they had more meaning to him than to others." Indeed, the Court agrees. There is no way for the Court to be aware of a debtor's assets and liabilities unless the debtor makes a complete and honest disclosure, one that is in fact meaningful to the Court, the trustee, and the creditors of the debtor, and not just meaningful to the debtor. When Unruh signed his petition, he essentially warranted such a meaningful presentation of his financial situation. A debtor files bankruptcy statements and schedules on the prescribed forms, which require the debtor to verify the averments therein under penalty of perjury. "By statute, that has the force and effect of an oath." *See Sears,* 246 B.R. at 347, citing 28 U.S.C. § 1746; *Dickinson v. Wainwright,* 626 F.2d 1184, 1186 (5th Cir.1980) (subscription to false statement made under 28 U.S.C. § 1746 equates to false oath).

The argument that Unruh in fact overstated the amount in his checking account rather than undervalued that asset is mystifying. Even under his own misplaced reliance on the date he signed the petition rather than the date he filed the petition, his bank statements speak for themselves and reveal that in his schedules Unruh did significantly undervalue his cash asset.

The argument that the entry in Schedule B27 (machinery, fixtures, equipment and supplies used in business) of $1,000 of equipment used in business (hairstyling), was intended to include all of Unruh's business assets, and in fact was also intended to include Unruh's collections of porcelain dolls and Department 56 houses, and thereby negate the necessity of completing B26, B28, and B5 individually, is difficult to believe, especially in concert with so many other misstatements and omissions.

Similarly, Unruh makes the implausible argument that the diamond ring he gave to his mother for Christmas in 2000 is the "jewelry" referred to in his Schedule B7. Unruh gifted the ring to his mother almost three months before he filed his petition. He did not schedule the transfer of the diamond ring. However, it is undisputed that the ring was no longer in Unruh's possession or ownership. The Court is not convinced that the "jewelry" scheduled in B7 is the diamond ring.

Although Unruh hails "no harm—no foul," he seems to be blind to the harm which he has caused his creditors and to the bankruptcy process in this case for his

purportedly erroneous or confused state of mind when he provided the substance of his schedules. Moreover, the purported errors in this case are not few and not minor and remain uncorrected or not satisfactorily explained. The fact of his most recent affidavit containing attestations contrary to his only slightly less recent deposition and discovery responses further undermines his credibility. Overall, the picture of Unruh as a debtor in this case, based exclusively on the schedules he prepared, is not just blurred, but is painted entirely the wrong color. There can be no mistaking that Unruh's omissions and misstatements in connection with this bankruptcy case were intentional.

■ As to materiality, Unruh has tried to minimize the perceived importance of the discrepancies and holes in his schedules by emphasizing the nominal value of the assets at issue. However, even if Unruh had proffered credible evidence of minimal values with respect to his many unscheduled business and personal assets, which he has not, the value of assets are not determinative of their materiality. *See Sears,* 246 B.R. at 347, citing *Olson,* 916 F.2d at 484 (the value of omitted assets is relevant to materiality, but materiality will not turn on value). The legal measure of materiality, whether the missing or inaccurate information bears a relationship to Unruh's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property, cannot be challenged with any good sense.

■ The inaccuracies here are entirely related to the determination of the wealth, small or great, of Unruh's estate, the assets and expenses of his business, and the discovery of assets possibly subject to recovery for liquidation and distribution to creditors. Section 727(a)(4)(A) "makes clear [that] '[t]he Code requires nothing less than a full and complete disclosure of any and all apparent interests of any kind.'" *See Korte,* 262 B.R. at 474; citing *Fokkena v. Tripp (In re Tripp),* 224 B.R. 95, 98 (Bankr.N.D.Iowa 1998); *In re Craig,* 195 B.R. 443, 451 (Bankr.D.N.D. 1996); *National Am. Ins. Co. v. Guajardo (In re Guajardo),* 215 B.R. 739, 742 (Bankr.W.D.Ark.1997) (Bankruptcy Code requires disclosure of all interests in property, the location of all assets, prior and ongoing business and personal transactions, and, foremost, honesty).

■ Unruh also suggested, without citing any law in support of the position however, that it was of some mitigation to the issue of materiality that an omitted asset was or would be exempt anyway.[3] The Court fails to perceive under what circumstances this premise might make any sense, at least when the asset remains unknown to all but the debtor and is not made part of the schedules by amendment. Obviously there can be no opportunity to determine the validity of an exemption, or to object to a claimed exemption, if the existence of the asset to which the debtor intends an exemption to apply is concealed from everyone except the debtor. Moreover, all property of the debtor becomes property of the bankruptcy estate unless and until the debtor claims an exemption

**3.** The Court notes that Unruh did not amend his schedules to include any assets understood to be exempt and to claim an exemption in the same, with the exception of the piano. Of course, the piano used up the § 522(d)(5) exemption once it was properly scheduled. Unruh has never since amended his schedules

to add any of the omitted assets in order to properly schedule them as non-exempt assets of his estate. His argument that omitted assets are irrelevant in light of "credits" available under exemptions fails in fact as much as in law, and instead he perpetuates nondisclosure of his unscheduled assets.

in some property, and then the property is only exempt to the extent of the value claimed or allowed; the exemptions do not operate automatically.

There is no doubt that the incontrovertible omissions and misrepresentations in Unruh's schedules are all material. He failed to list business assets, personal collections of things which have a secondary market, and transfers of a considerable amount of furnishings, antiques and collectibles, jewelry, and other personal property made within the year prior to filing bankruptcy. Unruh grossly understated his income and his checking account balance, undervalued the business assets he did schedule, and overstated business and personal expenses by claiming the same expenses in both categories. These are the basic details of any bankruptcy, and the outcome of a case, including distribution to creditors, if any, is finally determined as a result of these material details. The integrity of the process rests upon a complete and accurate petition and schedules and such was not the course of events in this bankruptcy case.

### Nondischargeability Under 11 U.S.C. § 523(a)(14)

Section 523(a)(14) of the Bankruptcy Code provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title

does not discharge an individual debtor from any debt—

(14) incurred to pay a tax to the United States that would be nondischargeable pursuant to paragraph (1).[4]

See 11 U.S.C. § 523(a)(14).

The Court has found a number of facts related to this issue. First, Rasmussen loaned $20,000 to Unruh; that it was a gift is unsupported by the record. Unruh's behavior is consistent with finding that it was a loan. He scheduled it as a loan, and he had earlier repaid a portion of it. He had borrowed money from Rasmussen in the past. Unruh only recently proffered the contention that the money was a gift and/or resolved by a settlement agreement between Unruh and Brian Rasmussen. Such attestations ring hollow when viewed in light of all the circumstances surrounding the purported purpose(s) of the loan and its actual applied use as patently illustrated by simple and objective tracing.

However, the issue of whether the debt is nondischargeable pursuant to § 523(a)(14), that is whether the loan proceeds were used to pay Unruh's nondischargeable tax debt, is moot. As a result of the Court denying Unruh a discharge pursuant to § 727(a)(4)(A), and by the contemporaneous operation of § 523(a)(10), that issue need not be determined.

4. Section 523(a)(1) provides: A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—(1) for a tax or a customs duty—(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed; (B) with respect to which a return, if required—(i) was not filed; or (ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax. See 11 U.S.C. § 523(a)(1). Sections 507(a)(8) provides, in relevant part: (a) The following expenses and claims have priority in the following order: (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—(A) a tax on or measured by income or gross receipts ... (C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity. See 11 U.S.C. § 507(a)(8).

 "[F]ederal courts may adjudicate only actual, ongoing cases or controversies." *See Missouri ex rel. Nixon v. Craig et al,* 163 F.3d 482, 484 (8th Cir. 1998), citing *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477–78, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) (citations omitted). "It is of no consequence that the controversy was live at earlier stages in this case; it must be live when [ ] decid[ing] the issues." *Id.* If a case is indeed moot, the Court must refrain from reaching the merits "because any opinion issued would be merely 'advisory' and rest on hypothetical underpinnings." *Id.*

 First, as an immediate result of the Court's decision and order for judgment herein on the § 727(a)(4)(A) question, there will be no discharge from which to except any debt. Therefore the issue of whether Unruh's debt to Rasmussen is nondischargeable pursuant to § 523(a)(14), because it was a debt incurred to pay a tax to the United States that would be nondischargeable under § 523(a)(1), is moot.

Section 523(a)(10) provides, in relevant part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(10) that was ... listed or scheduled by the debtor in a prior case concerning the debtor under this title ... in which the debtor ... was denied a discharge under section 727(a)(2), (3), (4), (5), (6), or (7) of this title....

*See* 11 U.S.C. § 523(a)(10); *In re Ault,* 271 B.R. 617, 619, (Bankr.E.D.Ark.2002).

Accordingly, a second immediate result of the Court's decision and order for judgment herein on the § 727(a)(4)(A) question is that Unruh's debt to Rasmussen is nondischargeable, in a future Chapter 7 case that could be filed by Unruh, by virtue of § 523(a)(10). Unruh scheduled the loan from Rasmussen as a debt in this case, and discharge is being denied in this case under § 727(a)(4). Therefore, whether the same debt is also nondischargeable pursuant to § 523(a)(14), because it was incurred to pay a tax to the United States that would be nondischargeable pursuant to paragraph (1), is moot. The denial of discharge converts this debt and all Unruh's other debts that were or could have been scheduled in this case to debts nondischargeable in Chapter 7.

### V. Conclusion

 "Section 727(a)(4)(A) provides a harsh penalty for the debtor who deliberately secretes information from the court, the trustee, and other parties in interest to his case." *See Sears,* 246 B.R. at 347. "In doing so, it bolsters the basic functions of estate administration and adjudication in bankruptcy." *Id.,* citing *Mertz,* 955 F.2d at 598; *In re Baskowitz,* 194 B.R. 839, 843 (Bankr.E.D.Mo.1996); *Payne v. Wood,* 775 F.2d 202, 206 (7th Cir.1985). "The petition, including schedules and statements, must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts." *See Sears,* 246 B.R. at 347, citing *Mertz,* 955 F.2d at 598. In this case, the plaintiff did the "digging out" and "independent examinations" to ascertain the real facts, and the Court is easily persuaded that denying Unruh's discharge pursuant to § 727(a)(4)(A) is the appropriate and indeed mandated penalty.

### ORDER FOR JUDGMENT

**IT IS HEREBY ORDERED:**

1. The plaintiff's motion for summary judgment on her complaint under 11 U.S.C. § 727(a)(4)(A) is granted;

2. The plaintiff's motion for summary judgment on her complaint under 11 U.S.C. § 523(a)(14) is denied as moot;

3. The defendant's cross motion for summary judgment is denied; and

4. The defendant, debtor Richard Allen Unruh, is denied a discharge of his debts in bankruptcy case 01–30992, pursuant to 11 U.S.C. § 727(a)(4)(A).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**