**In re Robert J. BIENIEK, Julie A. Palmer–Bieniek, Debtors.**

**Patti J. Sullivan, Trustee, Plaintiff,**

**v.**

**Robert J. Bieniek, Julie A. Palmer– Bieniek, Defendants.**

**Bankruptcy No. 08–34793.**
**Adversary No. 09–3042.**

United States Bankruptcy Court, D. Minnesota.

Oct. 9, 2009.

Mary Kay Mages, Michael S. Dove, Gislason & Hunter LLP, New Ulm, MN, for Plaintiff.

Jeffrey M. Bruzek, Bruzek Law Office, St. Paul, MN, for Defendants.

DENNIS D. O'BRIEN, Bankruptcy Judge.

At Saint Paul, Minnesota.

This matter came before the Court for trial on the Chapter 7 Trustee's complaint seeking denial of the debtors' discharge pursuant to 11 U.S.C. § 727(a). Mary Kay Mages appeared on behalf of the trustee. Jeffrey Bruzek appeared on behalf of the debtors. At the conclusion of trial, the Court took the matter under advisement. Based upon all of the files, record and proceedings herein, the Court being now fully advised makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I. FINDINGS OF FACT

The debtors, Robert and Julie Bieniek, filed a petition for relief under Chapter 7 on September 18, 2008, together with the required completed schedules, signed under penalty of perjury. Robert Bieniek is employed as a mechanic for the City of Oakdale, and has been a mechanic for more than thirty years. In 2001, he built a Rolling Thunder motorcycle, by himself and for his own use. Julie Bieniek is a bank production manager at Wells Fargo. In this capacity, for the last three years or so, she has managed a team of underwriters. Her position at the bank is one of significant responsibility, involving development, and requiring careful attention to detail.

At the time of filing, the Bienieks owned and possessed, but did not disclose in their petition and schedules, the following property:

* 2001 Rolling Thunder motorcycle, valued at approximately $15,000

* resort on Cocoa Beach timeshare, purchased in 2002 for $16,400

* jewelry, valued at approximately $500

* wedding ring, valued at approximately $50

* Matrix brand home computer with printer and monitor

* Key Fitness CM560R stationary bike

* 2005 Health Rider 8.5 fitness machine

* Wells Fargo Team Member checking account xxxxxx9305

* Wells Fargo PMA Prime checking account xxxxxx1417

* 2004 Weider weight bench

\* 2006 Everlast punching bag

\* 1996 Proform Treadmill J4

Following the meeting of creditors, a third party contacted the trustee and volunteered information which caused her to reconvene the meeting of creditors, inquire and discover the omitted assets. The Bienieks gave a number of explanations about the items and the omissions, relying essentially on having only briefly reviewed the petitions and schedules prior to signing and filing. They claimed to have disclosed and discussed the assets to their bankruptcy attorney, but the evidence does not support that assertion. The timeshare was variously and erroneously described as in fact belonging to Julie Bieniek's mother, as part of an estate planning process, as wholly without value, and as possibly secured by the association under a buy back provision. The trustee recovered that asset and sold it for $2,356 plus past due association fees.

Similarly, the Bienieks made various explanations with respect to omission of the Rolling Thunder motorcycle, including that it was in parts and of limited scrap or no value, that in its condition they did not understand it to constitute a vehicle, even though they maintained vehicle insurance coverage on it, and also that they had disclosed it to their bankruptcy attorney and simply failed to notice its absence on the schedules filed. Upon request by the trustee, the Bienieks purported to turn over the Rolling Thunder motorcycle. At that time they valued the motorcycle at approximately $15,000, a valuation later asserted by the Bienieks to have been Julie Bieniek's exclusive and totally random guess, and a significantly inflated estimate.

In fact, the engine contained in the motorcycle turned over to the trustee was a different and much less valuable engine than the engine noted on the original title, as discovered by the trustee's auctioneer following sale during the title transfer process when the engine title was refused. The Bienieks deny that they swapped engines prior to turning over the motorcycle, but the evidence to the contrary is compelling. The experienced auctioneer testified that the motorcycle was delivered as a bike frame and three boxes of parts, and not operational. He sold it in that condition for $4,000, and suggested that in operational condition he could have expected to sell it for closer to $10,000. The condition and whereabouts of the original engine remain unknown.[1]

The trustee contends that the Bienieks should be denied the discharge under § 727(a)(2)(A) and § 727(a)(4)(A) for fraudulent concealment of property and making false oaths in connection with the case. The Bienieks claim a "tragedy of errors" in failing to carefully review the petition and schedules and relying on counsel, and they assert that the omissions were innocent and immaterial. For the reasons set forth below, the Court finds for the trustee and shall enter judgment against the debtors.

## II. DISCUSSION

"Denying a debtor a discharge is a drastic remedy." *See In re Huynh*, 392 B.R. 802, 809 (Bankr.D.N.D.2008), citing *Kaler v. Geller (In re Geller)*, 314 B.R. 800, 806 (Bankr.D.N.D.2004). "In light of the policy implications favoring debtors under the Bankruptcy Code, section 727 must be construed liberally in favor of the debtor and strictly against the objecting party

1. Another motorcycle at issue is a "custom ultra motorcycle." It is apparently owned and housed by a friend, but used exclusively by Julie Bieniek, and is insured and maintained by the Bienieks.

with the burden of proof resting squarely upon the latter." *Huynh,* 392 B.R. at 809–810. "The standard of proof is a preponderance of the evidence." *See In re Sandiford,* 394 B.R. 487, 490 (8th Cir. BAP 2008).

The discharge "is the heart of the fresh start provisions of the bankruptcy law." H.R.Rep. No. 595, 95th Cong., 1st Sess. 384 (1977). "The solicitude of Congress, however, stops at the debtor who does not measure up to that appealing image (honest but unfortunate debtor) and who has engaged in grossly irresponsible or fraudulent conduct, has been recalcitrant during the case or has over-utilized the privilege." *See Butler v. Ingle (In re Ingle),* 70 B.R. 979, 984 (Bankr.E.D.N.C.1987) (quoting Riesenfeld, Creditors' Remedies and Debtors' Protection 729 (3d ed.1979)).

Section 727(a)(2) provides:

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

*See* 11 U.S.C. § 727(a)(2).

▮ In order to prevail under § 727(a)(2)(A), the trustee must demonstrate that the debtors' actions took place within twelve months prior to filing; that the debtor took the actions with the intent to hinder, delay or defraud creditors; and that the actions complained of in fact consisted of transferring or concealing property. *See Sandiford,* 394 B.R. at 490, citing *City Nat'l Bank of Ft. Smith, Ark. v. Bateman (In re Bateman),* 646 F.2d 1220, 1225 (8th Cir.1981); see also *In re Wagner,* 305 B.R. 472, 475 (8th Cir. BAP 2004); *Huynh,* 392 B.R. at 810. "Debtors rarely admit to a fraudulent intent, and parties seeking denial of a debtor's discharge must generally rely on a combination of circumstances that suggest that debtor harbored the necessary intent." *Huynh,* 392 B.R. at 810.

▮ In this case, there is no question that the Bienieks attempted to conceal various property interests by failing to disclose the assets in their petition and schedules, failing to make complete and accurate disclosures to their bankruptcy counsel, and failing to make the necessary disclosures to the trustee at the meeting of creditors, until the assets were subsequently, and independently, investigated and confirmed. Contrary to their claim of reliance on the attorney, which is in any event not supported by the record, both Bienieks admit that numerous drafts of the petition and schedules were provided to them by bankruptcy counsel for review, over the eight or more months between the initial meeting with their bankruptcy attorney and the date of filing. Moreover, Julie Bieniek has the professional experience and acumen to know that complete and honest content in the petition and schedules is absolutely and strictly important, essential and required.

The inconsistent explanations provided by the Bienieks at various stages of these proceedings indicate a pattern of conduct akin to unprepared and unmitigated damage control; they were simply forming false excuses on the fly. The trial was no different—neither debtor was a credible witness. While the Bienieks' back pedaling throughout the case strongly suggests

pre-petition concealment of the assets at issue with the intent to hinder, delay or defraud creditors and the trustee, and possibly post-petition transfer or removal of the original Rolling Thunder engine for the same intentionally nefarious purposes, the provision most directly applicable to these facts is § 727(a)(4)(A) for false oaths.

Section 727(a)(4)(A) provides:

(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

*See* 11 U.S.C. § 727(a)(4)(A).

■■■■ "In order to deny a debtor a discharge under this subparagraph, a plaintiff must establish that: (1) the debtor knowingly and fraudulently; (2) in or in connection with the case; (3) made a false oath or account; (4) regarding a material matter." *Huynh*, 392 B.R. at 812, citing *Korte v. United States (In re Korte)*, 262 B.R. 464, 474 (8th Cir. BAP 2001). "A debtor's signatures on the petition, made under penalty of perjury, are declarations which have the force and effect of oaths of the kind encompassed by the discharge exception for making a false oath." *Huynh*, 392 B.R. at 812, citing *Jordan v. Bren (In re Bren)*, 303 B.R. 610, 613 (8th Cir. BAP 2004) (overruled on other grounds).

■■■■ "The proper functioning of the entire bankruptcy process is dependent upon debtors providing complete, accurate and reliable information in the petition and other documents submitted with the filing of the case so that parties in interest may evaluate debtors' assets and liabilities and appropriately administer the case." *Id.* "Courts are often understanding of a single omission or error resulting from an innocent mistake, but multiple inaccuracies

or falsehoods may rise to the level of reckless indifference to the truth, which is the functional equivalent of intent to deceive." *Huynh*, 392 B.R. at 812, citing *Kaler v. Geller (In re Geller)*, 314 B.R. 800, 807 (Bankr.D.N.D.2004).

■■■■ For a false oath to bar discharge pursuant to § 727(a)(4), "the false statement must be both material and made with intent." *See In re Unruh*, 278 B.R. 796, 803 (Bankr.D.Minn.2002) (quoting *Korte*, 262 B.R. at 474). The question of a debtor's knowledge is one of fact, and intent can be established "by circumstantial evidence, and statements made with reckless indifference to the truth are regarded as intentionally false." *Id.*

■■■■ A false oath is material "if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Unruh*, 278 B.R. at 803, citing *Cepelak v. Sears (In re Sears)*, 246 B.R. 341, 347 (8th Cir. BAP 2000); see also *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir.1992).

The requirement that a debtor honestly disclose all facts relevant to the bankruptcy proceeding is necessary because "[t]here is no way for the Court to be aware of a debtor's assets and liabilities unless the debtor makes a complete and honest disclosure." *Unruh*, 278 B.R. at 804. The bankruptcy schedules and forms require the debtor to verify the information therein under penalty of perjury, and the verification "has the force and effect of an oath." *Sears*, 246 B.R. at 347.

■■■■ The Bienieks assert a tragedy of errors, and claim that the twelve conceded omissions or mis-characterizations are not material—the schedules were amended and the non-exempt, non-disclosed assets were turned over to the trustee, and the trustee was able to recover proceeds from

the property for distribution to creditors. This theory, however, overlooks the fundamental role of voluntary, unequivocal, and complete disclosure elementary to the bankruptcy process.

Even if this case were a mere matter of confusion and neglect, which it is not, the recklessness involved here would rise to the level of malfeasance required by the § 727 exceptions to discharge. The Bienieks admit multiple drafts and opportunities to review the schedules prior to filing. Even if bankruptcy counsel had erroneously omitted the assets, the Bienieks had many times to remedy the documents, as well as at the meeting of creditors. The delay and extended process occasioned by their failure with respect to so many interests, some relatively significant assets, is not acceptable under all of the circumstances.

Moreover, there is ample evidence to easily conclude that the omissions were no accident. The missing Rolling Thunder engine, the convenient arrangement concerning the ultra custom motorcycle, the time share property, and the inconsistent and unfounded explanations with respect to most of the omitted interests, combined with the Bienieks' lack of credibility at trial, demonstrate a planned and sustained intention to secrete assets from the bankruptcy. The remedy for knowing and fraudulent false oaths in connection with a bankruptcy case is denial of the discharge, and that is the necessary outcome in this case.

### III. DISPOSITION

IT IS HEREBY ORDERED:

1. The general discharge is main case 08–34793 is DENIED by operation of 11 U.S.C. § 727(a)(2)(A) and 11 U.S.C. § 727(a)(4)(A)

LET JUDGMENT BE ENTERED ACCORDINGLY.