# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

No. 10-6022

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Brett William Marino, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Brett William Marino, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Plaintiff-Appellant, | * | District of Minnesota |
| | * | |
| v. | * | |
| | * | |
| Joe Seeley, | * | |
| | * | |
| Defendant-Appellee. | * | |

Submitted:  September 23, 2010
Filed: October 25, 2010

Before VENTERS, SALADINO, and NAIL, Bankruptcy Judges.

NAIL, Bankruptcy Judge.

Brett William Marino appeals the April 6, 2010 judgment of the bankruptcy court[1] dismissing his complaint against Joe Seeley.  We affirm.

---

[1] The Honorable Nancy C. Dreher, Chief Judge, United States Bankruptcy Court for the District of Minnesota.

## BACKGROUND

Marino rented a room in Seeley's home. Twyla Sederstrom, Seeley's significant other, also resided in the home.

On April 13, 2009, Marino filed a petition for relief under chapter 7 of the bankruptcy code. Marino claimed later that same day, he told Sederstrom he had filed bankruptcy. Sederstrom's recollection of their conversation differed. At some point, Seeley became involved in the conversation, threats were exchanged, and Marino called the police.[2] After the police arrived, Marino left the premises.

On April 14, 2009, Seeley sought and obtained an *ex parte* order for protection under the Minnesota Domestic Abuse Act.[3] The order for protection prohibited Marino from committing acts of domestic abuse against Seeley, having any contact with Seeley, or entering Seeley's home.

On April 15, 2009, the bankruptcy noticing center mailed notice of the filing of Marino's bankruptcy to Marino's creditors, including Seeley. Seeley did not deny having received this notice sometime thereafter.

In his adversary complaint, Marino alleged Seeley violated the automatic stay when he sought the order for protection. The matter was tried, and the bankruptcy court entered a written decision in which it concluded Marino had not met his burden of proof. Judgment was entered dismissing with prejudice Marino's complaint against Seeley, and Marino timely appealed.

---

[2] It is not clear from the record whether there were two (or more) separate conversations or a single extended conversation.

[3] MINN. STAT. § 518B.01.

## STANDARD OF REVIEW

We review the bankruptcy court's legal conclusions *de novo* and its findings of fact for clear error. *See R & R Ready Mix v. Freier* (*In re Freier*), 604 F.3d 583, 587 (8th Cir. 2010) (citing *First Nat'l Bank of Olathe, Kansas v. Pontow*, 111 F.3d 604, 609 (8th Cir. 1997)).

## DISCUSSION

The filing of a petition for relief under title 11 automatically stays a variety of acts to collect or otherwise enforce a pre-petition debt. 11 U.S.C. § 362(a). If a creditor violates the automatic stay, the debtor is entitled to recover actual damages, including costs and attorney fees, and may, depending on the circumstances, also recover punitive damages. 11 U.S.C. § 362(k). To prevail under § 362(k), the debtor must show: (1) the creditor violated the automatic stay; (2) the violation was willful; and (3) the debtor was injured by the violation. *See Lovett v. Honeywell, Inc.*, 930 F.2d 625, 628 (8th Cir. 1991). A violation is willful "when the creditor acts deliberately with knowledge of the bankruptcy petition." *Knaus v. Concordia Lumber Co.* (*In re Knaus*), 889 F.2d 773, 775 (8th Cir. 1989).

The bankruptcy court correctly concluded Seeley did not violate the automatic stay when he sought and obtained an *ex parte* order for protection under the Minnesota Domestic Abuse Act. The filing of a petition for relief under title 11 does not stay the commencement or the continuation of a civil action or proceeding regarding domestic violence. 11 U.S.C. § 362(b)(2)(A)(v).

The bankruptcy code does not define or incorporate by reference another statute's definition of "domestic violence." We must therefore resort to the dictionary to determine its ordinary meaning.

In the absence of a statutory definition or clear contrary legislative intent, statutory terms are given their plain, ordinary, and commonly understood meaning. This court often turns to a commonly used dictionary to ascertain a word's ordinary meaning.

*Schumacher v. Cargill Meat Solutions Corp.*, 515 F.3d 867, 871 (8th Cir. 2008) (citation omitted). *See U.S. v. Timley*, 507 F.3d 1125, 1129 (8th Cir. 2007).

Black's Law Dictionary defines "domestic violence" as:

> 1. Violence between members of a household, usu. spouses; an assault or other violent act committed by one member of a household against another. . . . 2. The infliction of physical injury, or the creation of a reasonable fear that physical injury or harm will be inflicted, by a parent or a member or former member of a child's household, against a child or against another member of the household. . . .

*Black's Law Dictionary* 1705-06 (9th ed. 2009). We will give "domestic violence" this ordinary meaning for the purposes of § 362(b)(2)(A)(v).

The Minnesota Domestic Abuse Act creates a civil action "known as a petition for an order for protection in cases of domestic abuse." MINN. STAT. § 518B.01, subdiv. 4. The statute defines "domestic abuse" as:

> the following, if committed against a family or household member by a family or household member:
>
> (1) physical harm, bodily injury, or assault;
>
> (2) the infliction of fear of imminent physical harm, bodily injury, or assault; or

(3) terroristic threats . . .; criminal sexual conduct . . .; or interference with an emergency call[.]

MINN. STAT. § 518B.01, subdiv. 2(a).

The ordinary meaning of "domestic violence" certainly encompasses "domestic abuse" within the meaning of the Minnesota Domestic Abuse Act. Indeed, the terms appear to be synonymous. *See Black's Law Dictionary* 558 (referring its users to the definition of "domestic violence" for the definition of "domestic abuse").

In seeking an order for protection under the Minnesota Domestic Abuse Act, Seeley was therefore commencing a civil action regarding domestic violence. That civil action was not stayed by the filing of Marino's chapter 7 petition. Thus, Seeley did not violate the automatic stay.[4]

This conclusion is dispositive of Marino's appeal. As a result, we do not need to consider the remaining elements of a claim under § 362(k). We note, however, the bankruptcy court found Marino failed to establish Seeley was aware of Marino's bankruptcy when Seeley sought the order for protection. The bankruptcy court also found while Marino may have been injured by the order for protection, he failed to prove his damages.

Because Marino did not provide a transcript, we are unable to review the evidence presented at trial. Consequently, we can only conclude the bankruptcy court's findings of fact were not clearly erroneous. *McCormick v. Diversified*

---

[4] Marino argued, without citing any authority, the bankruptcy court abused its discretion in not considering Seeley's intent in seeking the order for protection. On its face, § 362(b)(2) says nothing about the intent of the party commencing or continuing a civil action or proceeding within its scope. Nevertheless, the bankruptcy court *did* consider Seeley's intent, and it found he acted reasonably in seeking the order for protection.

*Collection Servs., Inc.* (*In re McCormick*), 259 B.R. 907, 909 (B.A.P. 8th Cir. 2001) (citations therein).[5]

## CONCLUSION

For the foregoing reasons, we affirm the bankruptcy court's judgment dismissing with prejudice Marino's complaint against Seeley.

---

[5] For the same reason, to the extent Seeley's intent is relevant under § 362(b)(2), we reach the same conclusion regarding the bankruptcy court's finding that Seeley acted reasonably in seeking the order for protection.