# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

### Nos. 10-6029 / 10-6055 / 10-6059
_____

| | | |
|---|---|---|
| In re:  Larry James Grimlie | * | |
| | * | |
| Debtor | * | |
| _____ | * | |
| | | |
| Terri A. Georgen - Running | * | |
| | * | |
| Plaintiff - Appellee | * | Appeals from the United States |
| | * | Bankruptcy Court for the |
| v. | * | District of Minnesota |
| | * | |
| Larry James Grimlie | * | |
| | * | |
| Defendant - Appellant | * | |
| _____ | * | |
| | | |
| Larry James Grimlie | * | |
| | * | |
| Debtor - Appellant | * | |
| | * | |
| v. | * | |
| | * | |
| Terri A. Georgen - Running | * | |
| | * | |
| Trustee - Appellee | * | |
| _____ | * | |
| | | |
| Terri A. Georgen - Running | * | |
| | * | |
| Plaintiff - Appellee | * | |
| | * | |

|                              |     |
|------------------------------|-----|
| v.                           | \*  |
|                              | \*  |
| Craig Grimlie; Erica Johnson | \*  |
|                              | \*  |
| Defendants                   | \*  |
|                              | \*  |
| Larry James Grimlie          | \*  |
|                              | \*  |
| Defendant - Appellant        | \*  |
|                              | \*  |
| Linda Grimlie                | \*  |
|                              | \*  |
| Defendant                    | \*  |

_____

Submitted:  October 15, 2010
Filed: November 15, 2010

_____

Before SCHERMER, FEDERMAN, and SALADINO, Bankruptcy Judges

FEDERMAN, Bankruptcy Judge

In these consolidated appeals, Debtor Larry James Grimlie[1] appeals from three Orders in which the Bankruptcy Court[2] (i) vacated and denied his discharge pursuant to 11 U.S.C. §§ 727(a)(2) and (a)(4)(A); (ii) sustained an objection to his homestead and farming equipment exemptions; and (iii) avoided fraudulent transfers to his wife and children under 11 U.S.C. § 548 and ordered the sale of his home pursuant to 11 U.S.C. § 363(h).  For the reasons that follow, we AFFIRM.

_____

[1] Although in some instances Larry Grimlie appears to argue on behalf of the other defendants in the cases below, he is not an attorney authorized to represent those people, and none of them filed notices of appeal on their own behalf.

[2] Hon. Robert J. Kressel, United States Bankruptcy Judge for the District of Minnesota.

**FACTUAL BACKGROUND**[3]

Larry and Linda Grimlie are a married couple who, for more than twenty years, have operated a business involving the sale of equipment, the manufacture and sale of horse shelters, horse boarding, and growing hay that is sold to their horse boarding customers. In September 2000, the Grimlies experienced a fire at their residence which destroyed an expensive piece of equipment that belonged to Lowell Thorud. The equipment was not insured, and the Grimlies were unable to pay Thorud for the lost equipment.

Until sometime in 2001, the Grimlies conducted their equipment sales through Minn-Tech Machine Tools, Inc., an S-corporation owned solely by Larry Grimlie. In March 2001, he filed a "certificate of assumed name" with the Minnesota Secretary of State which he signed as "president." The certificated indicated that he and Linda would be conducting business under the name "Westwind Enterprises." In 2001 and 2002, Larry had gross equipment sales of approximately $497,000 and $280,000, respectively. He also had sizeable income through the sale of equipment in 2003 and 2004. They did not make a profit on the hay crops. Until March 2003, Larry's income was deposited into a US Bank account in the name of "Larry Grimlie sole proprietor of Westwind Enterprises."

On March 3, 2003, Lowell Thorud obtained a judgment from the Wright County District Court against Larry in the amount of approximately $270,000.

On March 12, 2003, Linda Grimlie opened a new account at Annandale State Bank in the name of "Linda Grimlie, Westwind Enterprises." Although Larry's name

---

[3] Because none of the parties submitted transcripts or any of the documents received into evidence at the trials in these cases, we glean the following facts, in some instances verbatim, from the Bankruptcy Court's Orders and the records appearing in the dockets of the proceedings before the Bankruptcy Court.

was not on the account, he was an authorized signatory. At the same time, Linda also opened a personal account at Annandale State Bank. The money going into the Linda Grimlie/Westwind Enterprises Annandale account was primarily earned by Larry, and nearly all of Larry's income went into that account. The Bankruptcy Court found that Larry did not earn a salary, but instead earned his income from equipment sales in 2003 and 2004, which he deposited into the Linda Grimlie/Westwind Enterprises Annandale Account for the purpose of protecting it from Thorud. Linda took money from that account and moved it to her personal account to pay their bills.

Over the next year and a half, the Bankruptcy Court found, Larry and Linda engaged in a number of transfers of their property, including their homestead, the Westwood Enterprises business, and several items of personal property, between themselves and to their children, all in an effort to avoid paying the Thorud judgment.

Larry filed a voluntary Chapter 7 bankruptcy petition on September 30, 2004. On November 24, 2004, the Chapter 7 Trustee objected to several of Larry's claimed exemptions, including his homestead exemption. Thorud also objected to exemptions. On January 3, 2005, the Trustee filed an adversary proceeding against Larry seeking a denial of his discharge under § 727.[4] She also filed an adversary proceeding against Larry and Linda, as well as their daughter, Erica Johnson, and Mr. Grimlie's son, Craig Grimlie, seeking avoidance of preferential transfers made by Larry to Linda and the children, and recovery of certain property of the bankruptcy estate.[5] The Grimlies settled these matters with the Trustee by, *inter alia*, conveying forty acres of their land

---

[4] *Georgen-Running v. Grimlie (In re Grimlie)*, Ch. 7 Case No. 04-45493, Adv. No. 05-4001 (Bankr. D. Minn. Jan. 3, 2005).

[5] *Georgen-Running v. Grimlie, et al., (In re Grimlie)*, Ch. 7 Case No. 04-45493, Adv. No. 05-4041 (Bankr. W.D. Mo. Feb. 17, 2005).

to the Trustee.[6] The Bankruptcy Court approved the settlement and dismissed both adversary proceedings.[7] Larry received his discharge on March 9, 2006.

The parties then encountered problems with zoning on the property. Ultimately, the Bankruptcy Court declared the settlement to be frustrated, and thus unenforceable, due to a mutual mistake regarding the zoning ordinances and the ability to obtain a variance.[8] The Bankruptcy Court declared the settlement agreement and resulting quitclaim deed void.

Then, at the Trustee's request, the Court reinstated the adversary proceedings that had been dismissed due to the settlement. As a result, the issues of revocation of Larry's discharge, and the preferential transfers to Linda and the children were revived. In addition, the Court vacated the settlement in the main case as it related to the objections to exemptions, thus reviving those objections as well.

Following trials and hearings in the matters, the Court then entered three Orders which are the subject of this appeal: (i) it denied Larry's discharge in Adversary Number 05-4001; (ii) it avoided the transfers of several items of property to Linda and the children, and ordered the real property sold, in Adversary Number 05-4041; and (iii) it declared that only $200,000 of the equity in the homestead was exempt, only $13,000 of the equity in a 2003 Chevrolet pickup was exempt, and Larry's interest in animals, farming equipment and implements, farm supplies, chemicals, feed, machinery, fixtures, equipment and supplies, which Larry used in his business were not exempt. Larry appeals from all three Orders.

---

[6] *See Running v. Grimlie (In re Grimlie)*, 409 B.R. 497 (B.A.P. 8th Cir. 2009) (describing the factual history and settlement of the adversary proceedings).

[7] *In re Grimlie*, 409 B.R. at 498.

[8] *Id.*

**STANDARD OF REVIEW**

We review findings of fact for clear error and conclusions of law *de novo.*[9]

**DISCUSSION**

*Adversary No. 05-4001 - Denial of Discharge*

The Bankruptcy Court found that Larry's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2) and (a)(4), which provide that the court shall grant the debtor a discharge, unless –

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –

> (A) property of the debtor, within one year before the date of the filing of the petition; or

> (B) property of the estate, after the date of the filing of the petition; [or]

* * *

(4) the debtor knowingly and fraudulently, in or in connection with the case –

> (A) made a false oath or account;

---

[9] *First Nat'l Bank of Olathe v. Pontow (In re Pontow),* 111 F.3d 604, 609 (8th Cir. 1997); Fed. R. Bankr. P. 8013.

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.[10]

The Bankruptcy Court correctly stated the law under § 727(a)(2): In order to prevail under 727(a)(2), the Trustee must prove: "that the debtor's actions took place within twelve months prior to filing; that the debtor took the actions with the intent to hinder, delay or defraud creditors; and that the actions complained of in fact consisted of transferring or concealing property."[11] Further, a presumption of fraud arises when a debtor has transferred valuable property without payment.[12] "Once a gratuitous transfer is shown, the burden then shifts to the debtor to prove his intent was not to hinder, delay, or defraud his creditors."[13]

Here, the Bankruptcy Court found that, although most of the transfers complained of by the Trustee occurred outside of the twelve months prior to the

---

[10] 11 U.S.C. §§ 727(a)(2) and (a)(4).

[11] *Citing Sullivan v. Bieniek (In re Bieniek)*, 417 B.R. 133, 137 (Bankr. D. Minn. 2009). *See also City Nat'l Bank of Ft. Smith v. Bateman (In re Bateman)*, 646 F.2d 1220, 1222 (8th Cir. 1981) ("The proof must show (1) that the act complained of was done within twelve months of the filing of the bankruptcy petition, (2) with intent to hinder, delay or defraud creditors, (3) that the act was done by the bankrupt, and (4) that the act consisted of transferring, removing, destroying or concealing any of bankrupt's property.").

[12] *Cadlerock Joint Venture II, L.P. v. Sandiford (In re Sandiford)*, 394 B.R. 487, 490 (B.A.P. 8th Cir. 2008) (*citing The Abbott Bank-Hemingford v. Armstrong (In re Armstrong)*, 931 F.2d 1233, 1239 (8th Cir. 1991)).

[13] *Id.*

September 30, 2004 filing, Larry's ongoing efforts to conceal his assets and the deposits of his income into the Linda Grimlie/Westwind Enterprises Annandale account occurred within twelve months prior to filing. The Court further found that the suspicious timing of certain transfers on June 6, 2003, which was after the Thorud judgment was made, but before it had been docketed, and which included transferring Larry's interest in the home, two trailers, and a car to Linda, established that Larry acted with the intent to hinder, delay or defraud Thorud, a creditor. Finally, it found that Larry's actions, including running funds through an account in his wife's name, consisted of transferring or concealing property, and was dishonest.

Although Larry filed a notice of appeal of the Order denying his discharge, his Brief, which was filed in all three cases appealed, focuses almost exclusively on the rulings on the exemptions. He expresses no specific error as to any finding of fact under § 727(a)(2), except as to intent and, perhaps, that any of the transfers occurred within a year prior to filing. He appears to concede that he made the transfers to avoid paying Thorud's judgment.[14] In any event, to the extent that Larry does contend that the Court erred in its factual findings under § 727(a)(2), Larry has not provided us with a transcript of the trial in that proceeding. Without the benefit of a transcript, we are unable to review the evidence presented at trial and, as a result, can only conclude that the bankruptcy court's findings of fact were not clearly erroneous.[15] As a result, the Court's denial of Larry's discharge under § 727(a)(2) must be affirmed.

Similarly, as to § 727(a)(4), the Bankruptcy Court correctly stated that, "[i]n order to deny a debtor a discharge under this subparagraph, a plaintiff must establish

---

[14] *Appellant's Brief* at 4 ("This case involves a debtor who over 1 year prior to filing [a] voluntary Chapter 7 petition on September 30[,] 2004 transferred assets to include the exempt homestead asset to his spouse to avoid a monetary judgment by Lowell Thorud.").

[15] *In re Marino*, ___ B.R. ____, 2010 WL 4157184 (B.A.P. 8th Cir. Oct. 25, 2010) (*citing McCormick v. Diversified Collections Servs., Inc. (In re McCormick)*, 259 B.R. 907, 909 (B.A.P. 8th Cir. 2001)).

that: (1) the debtor knowingly and fraudulently; (2) in or in connection with the case; (3) made a false oath or account; (4) regarding a material matter."[16] Under § 727(a)(4)(A), a false statement may bar discharge if it is "both material and made with intent."[17] "Intent can be established by circumstantial evidence and statements made with reckless indifference to the truth are regarded as intentionally false."[18] If a false oath "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property," it is material.[19]

The Bankruptcy Court found that Larry failed to list Westwind Enterprises in response to Item 18(a) on his Statement of Financial Affairs, even though he admitted he owned at least a fifty percent interest in that entity, and was its sole proprietor or partner, within six years of the filing of the bankruptcy case. Instead, he listed his interest in Minn-Tech Machines as beginning in 1992 and ending in 2004, even though he testified that he ceased doing business under that entity in 2001 and began doing business through Westwind Enterprises in 2001. The Court further found that he offered no credible explanation for the misinformation and that he omitted the Westwind Enterprises information as part of his ongoing scheme to hide his assets from creditors. These circumstances established either actual fraud or reckless indifference to the truth, the Court found.

---

[16] *Kaler v. Huynh (In re Huynh)*, 392 B.R. 802, 812 (Bankr. D. N.D. 2008) (*citing Korte v. United States (In re Korte)*, 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001)).

[17] *See Rasmussen v. Unruh (In re Unruh)*, 278 B.R. 796, 803 (Bankr. D. Minn. 2002) (*quoting Korte*, 262 B.R. at 474).

[18] *Korte v. United States (In re Korte)*, 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001) (citation and internal quotation marks omitted).

[19] *Unruh*, 278 B.R. at 803 (*citing Cepelak v. Sears (In re Sears)*, 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000)); *see also Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992).

The Court further found that the failure to list $5,560.59 in the Annandale accounts, sales contracts totaling $7,200, and several firearms on the schedules constituted a false oath under § 727(a)(4).

Again, Larry's Brief does not appear to point to specific findings of fact relating to § 727(a)(4) which were clearly erroneous. However, as above, to the extent that he does assert factual error, without a transcript or documentary evidence, we are unable to conclude that any such finding was clearly erroneous. The Court's denial of Larry's discharge under § 727(a)(4) must, therefore, be affirmed.

### *Adversary No. 05-4041 - Avoidance of Transfers and Authority to Sell the Homestead*

The Trustee sought to avoid a number of transfers from Larry to his family members pursuant to several provisions under the Bankruptcy Code and Minnesota Statutes. The Trustee also sought declaratory judgment that Larry and Linda's joint tenancy in the homestead property was severed upon the filing of Larry's bankruptcy petition and requested authority to sell the property pursuant to § 363 of the Bankruptcy Code. The Court found that the Trustee failed to meet his burden as to some of the transfers, and the Trustee does not appeal those findings. Accordingly, we limit our discussion to the transfers which the Court did avoid, and the declaratory judgment regarding the homestead.

### <u>Avoidance and Recovery of Transfers under 11 U.S.C. §§ 547, 548, and 550</u>

The Court found two of the transfers to the children were avoidable under § 548 as fraudulent transfers, and were recoverable from the transferees under § 550. Pursuant to the version that was in effect at the time Larry filed his petition, that section provided:

10

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily –

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)    (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)    (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.[20]

Section 550 provides, in relevant part:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from –

---

[20]  11 U.S.C. § 548(a) (2004).

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from–

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.[21]

Specifically, the Court found that, in early 2004, Larry sold two snowmobiles which he owned and deposited the funds into his wife's personal bank account. He then paid $7,000 of those funds to his daughter, Erica Johnson, who used the money to acquire a horse trailer. According to the Court, these events occurred within one year prior to filing the petition and the transfers were made with the actual intent to hinder, delay or defraud Thorud. Thus, the transfer was avoidable under § 548(a)(4)(A). Since Erica presented no evidence that the transfer to her was for value, in good faith, and without knowledge of the voidability of the transfer, the Trustee could recover the $7,000 from her pursuant to § 550.

Second, the Court found that Larry obtained $8,000 from his MBNA credit card in July 2004, which was two months before filing the petition, and deposited the money into the Linda Grimlie, Westwind Enterprises account. The funds were then transferred to Linda's personal account. $7,400.53 of the funds were used to purchase a 2005 Honda motorcycle for Larry's son, Craig Grimlie, but Linda held title to it. Again, the Court held that the transfer was one of a series of transfers to place Larry's assets outside of the reach of his creditors and was avoidable under § 548(a)(1)(A).

_____

[21] 11 U.S.C. § 550(a) and (b).

Since Craig presented no evidence that the transfer was for value, in good faith, and without knowledge of the voidability of it, the Trustee could recover $7,400.53 from Craig under § 550.

The Court correctly applied the law as to the avoidability and recoverability of these transfers under the Bankruptcy Code. Neither Erica nor Craig appealed. Larry's Brief appears to deny fraudulent intent on his part. To the extent that he asserts the Court erred in finding fraudulent intent and recoverability from Erica and Craig, we are, once again, without a transcript of the trial in this proceeding. The findings under § 548 and 550 will, therefore, be affirmed.

### *Avoidance and Recovery of Transfers under 11 U.S.C. §§ 544 and 550 and Minn. Stat. §§ 513.44(a) and 513.47*

Section 544(b) of the Bankruptcy Code provides:

> The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.[22]

"Bankruptcy trustees use section 544(b) as a conduit to assert state law-based fraudulent conveyance actions in bankruptcy."[23] As relevant here, the Trustee sought to avoid and recover several other transfers under § 513.44 and 513.47 of the Minnesota Statutes. Section 513.44 provides, in relevant part:

---

[22] 11 U.S.C. § 544(b).

[23] *In re DLC, Ltd.*, 295 B.R. 593, 601 (B.A.P. 8th Cir. 2003) (citing *Williams v. Marlar (In re Marlar)*, 267 F.3d 749, 753 (8th Cir. 2001)).

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

> > (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

> > (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.[24]

Under this provision, the Court found that, on June 6, 2003, Larry signed the certificates of title to a 1997 Felling Trailer, a 2002 ABU Trailer, and a 1994 Pontiac, transferring his ownership in those vehicles to Linda.[25]   There was no evidence that he received any consideration for these transfers.  The Court found that these transfers were part of Larry's scheme to defraud his creditors, particularly Thorud, by hiding his assets and removing them from the creditors' reach.  In view of the fact that he had a debt to Thorud in the amount of $270,000, that he was contemplating bankruptcy, and unable to pay his legal bills, he reasonably should have believed that he would incur debts beyond his ability to pay as they became due.  The Court correctly applied

---

[24]  Minn. Stat. § 513.44(a).

[25]  In Minnesota, cases involving fraud have a statute of limitations of six years.  Minn. Stat. § 541.05 subd. 1(6); *see also In re Curry*, 160 B.R. 813, 819 n. 5 (Bankr. D. Minn. 1993) (noting that fraudulent conveyance actions under Minnesota's Uniform Fraudulent Transfers Act have a statute of limitations of six years pursuant to § 541.05 subd. 1(6)).

the law, and Larry points to no clear error in these factual findings. As a result, we find no error in the Court's conclusion that the elements of both § 513.44(a)(1) and (a)(2) were met and that the transfers were fraudulent under those provisions.

Section 513.47(a) provides that, "[i]n an action for relief against a transfer or obligation under sections 513.41 to 513.51, a creditor, subject to the limitations in section 513.48, may obtain . . . avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim."[26] Because the transfers were fraudulent under § 513.44, the Court correctly concluded that they would have been avoidable by a creditor under § 513.47(a)(1). Thus, the Trustee was able to avoid and recover them under §§ 544 and 550 of the Bankruptcy Code.

### *Declaratory Judgment and Trustee's Authority to Sell the Homestead under § 363*

According to the Court, on June 6, 2003, Larry transferred all of his interest in the Grimlie homestead to Linda by a quitclaim deed. On September 3 or 4, 2004, Linda quitclaimed the homestead to Larry and herself as joint tenants. Thus, at the time he filed his bankruptcy petition on September 30, 2004, the property was titled to Larry and Linda as joint tenants.[27] Under Minnesota law, Larry then had an undivided interest, as a joint tenant with Linda, in the property.[28] As such, he had a right of survivorship to Linda's interest in the property, as well as a then-present right to use and occupy the property.[29] "A joint tenant generally has the right to unilaterally sever the joint tenancy, so long as the joint tenant satisfies at least one of the statutory

---

[26] Minn. Stat. § 513.47(a)(1).

[27] Minnesota is neither a community property nor a tenancy by entireties state. *See In re Carlson*, 394 B.R. 491, 494 (B.A.P. 8th Cir. 2008); *Hendrickson v. Minneapolis Fed. Sav. & Loan Ass'n*, 281 Minn. 462, 464, 161 N.W.2d 688, 691 (Minn. 1968).

[28] *O'Hagan v. U.S.*, 86 F.3d 776, 779 (8th Cir. 1996).

[29] *Id.*

methods for doing so."[30] As relevant here, section 500.19, subd. 5 of the Minnesota Statutes provides that "[a] severance of a joint tenancy interest in real estate by a joint tenant shall be legally effective only if . . . a severance is effected pursuant to a bankruptcy of a joint tenant."[31] Although Minnesota law generally protects a spouse's interest in homestead property by restricting the ability of one spouse to convey an interest without the consent of the other spouse,[32] we found no spousal exception to the bankruptcy provision in § 500.19, subd. 5.[33] Indeed, § 507.02, which restricts a spouse's ability to convey the homestead, contains an exception based on § 500.19, subd. 5. Therefore, as the Bankruptcy Court held, the joint tenancy was severed when Larry filed his bankruptcy petition. At that point, the interest became as tenants-in-common,[34] and Larry's tenant-in-common interest passed to the bankruptcy estate by virtue of § 541 of the Bankruptcy Code.

Section 363(h) of the Bankruptcy Code provides:

(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if –

---

[30] *Id.* at 780.

[31] Minn. Stat. § 500.19 subd. 5. *See In re Holman*, 286 B.R. 882 (Bankr. D. Minn. 2002).

[32] *Id.*; Minn. Stat. § 500.19, subd. 4; Minn. Stat. § 507.02 (providing that, with certain exceptions, if an owner of a homestead is married, no conveyance of the homestead shall be valid without the signatures of both spouses).

[33] Minn. Stat. § 507.02 (expressly stating that a severance pursuant to § 500.19, subd. 5 is an exception to the rule requiring the signatures of both spouses).

[34] *O'Hagan*, 86 F.3d at 780 ("Once the joint tenancy has been severed it converts into a tenancy in common and extinguishes the other joint tenant's right of survivorship.").

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power. [35]

Pointing out that the parties had already attempted to divide the property, but were unable to do so due to the problems with zoning, the Court found that the Trustee credibly testified that division was not possible, partition was impracticable, the sale of Larry's undivided interest would realize significantly less for the estate than the sale free of Linda's interest, and the benefit to the estate outweighed any detriment to Linda. Further, it was undisputed that the property was not used in the production, transmission or distribution of electric energy or of natural or synthetic gas for heat, light or power. Therefore, the Court found the Trustee was entitled to sell both the estate's and Linda's interests under § 363.

Larry lists two questions relating to the sale of the homestead under the "Statement of Issues" section in his Brief: Issue Number 14, "Did the Bankruptcy [Court] err in ordering the sale of the entire homestead, thus not protecting the rights of the non-debtors [sic] spouse[?]"; and Number 18, "Did the Bankruptcy court err in allowing the trustee to sell the homestead of the debtor's and Linda Grimlie[']s interests[?]" Larry points to no specific error of law or fact, and we find none. The

_____

[35] 11 U.S.C. § 363(h).

17

Order authorizing the Trustee to sell the property pursuant to § 363(h) will, therefore, be affirmed.

## Objection to Exemptions

*Homestead*

Larry's Brief focuses primarily on the findings regarding the exemptions. Larry asserts the Court erred in holding that the real property was not agricultural property, as defined by the Minnesota homestead exemption laws, and that he was therefore only entitled to a $200,000 homestead exemption. As relevant in 2004, when Larry filed his Chapter 7 petition, Minnesota law provided for a homestead exemption as follows:

> The house owned and occupied by a debtor as the debtor's dwelling place, together with the land upon which it is situated to the amount of area and value hereinafter limited and defined, shall constitute the homestead of such debtor and the debtor's family, and be exempt from seizure or sale under legal process on account of any debt not lawfully charged thereon in writing, except such as are incurred for work or materials furnished in the construction, repair, or improvement of such homestead, or for services performed by laborers or servants and as is provided in section 550.175.[36]

Further:

> The homestead may include any quantity of land not exceeding 160 acres, and not included in the laid out or platted portion of any city. If the homestead is within the laid out or platted portion of a city, its area must not exceed one-half of an acre. The value of the homestead exemption, whether the exemption is claimed jointly or individually, may not exceed

---

[36] Minn. Stat. § 510.01 (2004).

18

$200,000 or, if the homestead is used primarily for agricultural purposes, $500,000, exclusive of the limitations set forth in section 510.05.[37]

The Trustee made two points in his objection to the homestead exemption. First, that the property claimed exempt was actually two separate parcels which should not have been considered together as the homestead property. Second, the Trustee asserted that the property was not used primarily for agricultural purposes so the homestead was limited to $200,000. The Bankruptcy Court rejected the first argument, saying that Minnesota law was clear that contiguous tracts may be treated as a single property for purposes of the homestead exemption.[38] Neither party appeals that part of the decision.

However, the Bankruptcy Court ruled in favor of the Trustee on the second argument, finding that the homestead was not "used primarily for agricultural purposes." Note that the Trustee did not object to the *quantity of land* claimed exempt – *i.e.,* 160 acres, as opposed to the one-half acre which would have been allowed if the homestead had been located within the laid out or platted portion of a city. Rather, the Trustee's objection focused solely on the last sentence of the statute, relating to *value*, which, the Bankruptcy Court correctly held, depends on the narrow question whether the primary use of the land was agricultural.

According to the Court, the only evidence produced by Larry was his own testimony, a copy of the 2003 Minnesota revenue certificate for his business, Westwind Enterprises, and the testimony of AgStar employee Doug Swarthout. Because we have no transcript of the hearing, we cannot find that the Court's findings related to the testimony were clearly erroneous. The revenue certificate, the Court found, contained no information regarding whether the land was used primarily for

---

[37] Minn. Stat. § 510.02 (2004).

[38] *Citing Brixius v. Reimringer*, 101 Minn. 347, 112 N.W. 273 (Minn. 1907).

19

agricultural purposes.  Further, the Court correctly emphasized, the inquiry focuses on the *use* of the property, not *classification* for tax or zoning or other purposes.

Thus, the question is whether there was evidence to support the Court's finding that the property was used primarily for agricultural purposes.  The term "agricultural purposes" is not defined in the homestead statute, nor do there appear to be any cases interpreting that phrase in the context of § 510.02.  Larry points out on appeal that the Minnesota legislature has defined "agricultural purposes" in the context of classification of property for tax purposes as "the raising, cultivation, drying, or storage of agricultural products for sale, or the storage of machinery or equipment used in support of agricultural production by the same farm entity."[39]  It further defines "agricultural products," as used in that subdivision, to include production for sale of:

> (1) livestock, dairy animals, dairy products, poultry and poultry products, fur-bearing animals, horticultural and nursery stock, fruit of all kinds, vegetables, forage, grains, bees, and apiary products by the owner; [or]
>
> * * *
>
> (3) the commercial boarding of horses, which may include related horse training and riding instruction, if the boarding is done on property that is also used for raising pasture to graze horses or raising or cultivating other agricultural products as defined in clause (1).[40]

Larry asserts that he boarded horses on the property and grew hay for the horses, thus meeting this definition.  However, even if we were to look to that definition for guidance, the Court found that Larry's income tax returns, petition, and schedules showed that the Grimlies actually used the property primarily as a residence, for their

---

[39]  *See* Minn. Stat. § 273.13(e).

[40]  Minn. Stat. § 273.13(i) (1) and (3).

equipment sales business, and their horse shelter manufacture and sales business. The horse boarding and hay sales brought in relatively little income and most of the horses belonged to the Grimlies' daughter. We find no clear error in these factual findings, particularly since much of the evidence on which the Court relied was testimonial and we have no transcript of the hearing.

*Animals, Farming Equipment, and Farming Supplies*

Section 550.37 Subd. 5 of the Minnesota Statutes provides the following exemption:

> Farm machines and implements used in farming operations by a debtor engaged principally in farming, livestock, farm produce, and standing crops, not exceeding $13,000 in value. When a debtor is a partnership of spouses or a partnership of natural persons related to each other within the third degree of kindred according to the rules of the civil law, for the purposes of the exemption in this subdivision, the partners may elect to treat the assets of the partnership as assets of the individual partners.[41]

Again, the question here is whether Larry was "engaged principally in farming, livestock, farm produce, and standing crops." The Court sustained the Trustee's objection to Larry's claimed exemption in animals, farming equipment, and farming supplies for the same reasons it reduced the homestead exemption: Larry was not principally engaged in farming; rather, he was primarily engaged in manufacturing and equipment sales. For the same reasons above, we find no clear error in this finding.

---

[41] Minn. Stat. § 550.37, subd. 5.

Larry also claimed an exemption in a 2003 Chevrolet pickup for its full value, $22,000, as well as other equipment used in his business, under § 550.37 Subd. 5 and 6. The Court limited this exemption to $13,000 under § 550.37(7), which provides that "[t]he total value of property selected by a debtor pursuant to subdivisions 5 and 6 shall not exceed $13,000, if the exemptions under subdivisions 5 and 6 are combined." Technically, since Larry was not entitled to claim an exemption under Subd. 5, his exemption in the pickup may have actually been limited to $5,000 under Subd. 6.[42] However, the Trustee did not appeal that holding. On this exemption, Larry simply lists the question "Did the Bankruptcy court err in finding that the 2003 Chevrolet 3500 pickup as of September 30, 2004 was exempt to the extent of $13,000[?]" He does not elaborate, nor does he point to any specific error of law or fact on this question. Consequently, we affirm the Bankruptcy Court's Order.

## CONCLUSION

For the foregoing reasons, the Orders of the Bankruptcy Court (i) vacating and denying Larry Grimlie's discharge pursuant to 11 U.S.C. §§ 727(a)(2) and (a)(4)(A); (ii) sustaining the Trustee's objection to his exemptions; and (iii) avoiding the fraudulent transfers to Larry Grimlie's wife and children under 11 U.S.C. § 548 and ordered the sale of his home pursuant to 11 U.S.C. § 363(h) are AFFIRMED.

---

[42] Subdivision 5 provides an exemption for "[t]he tools, implements, machines, instruments, office furniture, stock in trade, and library reasonably necessary in the trade, business, or profession of the debtor, not exceeding $5,000 in value." Minn Stat. § 550.37, subd. 6.