# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 12-6046

_____

In re: Mark M. Rose

*Debtor*

------------------------------

Bank of Nebraska

*Plaintiff - Appellee*

v.

Mark M. Rose

*Defendant - Appellant*

Thomas D. Stalnaker

*Defendant*

------------------------------

Mark M. Rose

*Counter Claimant - Appellant*

Thomas D. Stalnaker

*Counter Claimant*

v.

Bank of Nebraska

*Counter Defendant - Appellee*

_____

NAIL, Bankruptcy Judge.

Mark M. Rose ("Debtor") appeals the June 11, 2012 judgment of the bankruptcy court[1] determining the debt he owed to Bank of Nebraska ("Bank") was excepted from discharge under 11 U.S.C. § 523(a)(2)(B) and denying any recovery on Debtor's counterclaim. We affirm.

## BACKGROUND

Over a three-year period beginning in 2003, Debtor borrowed money from Bank and pledged various items as collateral. Debtor ultimately defaulted on the loans. After Bank sold the collateral and applied the proceeds to the indebtedness, a deficiency of more than $300,000.00 remained.

Debtor filed a petition for relief under chapter 7 of the bankruptcy code on September 11, 2005. Bank timely filed a complaint to determine the dischargeability of its claim under 11 U.S.C. § 523(a)(2)(B), and Debtor timely filed an answer. Debtor later amended his answer to add a nine-count counterclaim.

---

[1]The Honorable Timothy J. Mahoney, United States Bankruptcy Judge for the District of Nebraska.

In his counterclaim, Debtor alleged Bank breached several of its duties under Nebraska law and converted a lengthy list of Debtor's assets ("the state law counterclaims"). Debtor asked the bankruptcy court to void Bank's security interest and award him damages for Bank's alleged wrongdoing. On Debtor's motion, Thomas D. Stalnaker, the chapter 7 trustee, was subsequently joined as a defendant and counterclaimant.

The matter was tried, and following its receipt of post-trial briefs from Bank and Debtor, the bankruptcy court entered a memorandum order and a judgment excepting Bank's claim from discharge under 11 U.S.C. § 523(a)(2)(B) and denying Debtor any recovery on the state law counterclaims. Debtor timely filed a notice of appeal.

## STANDARD OF REVIEW

Debtor's appeal involves issues of both fact and law. We review the bankruptcy court's findings of fact for clear error and its legal conclusions *de novo*. *Islamov v. Ungar* (*In re Ungar*), 633 F.3d 675, 678-79 (8th Cir. 2011).

## DISCUSSION

Debtor raises seven issues on appeal: (1) whether the bankruptcy court erred by using a subjective justifiable reliance standard rather than an objective reasonable reliance legal standard in determining whether Bank reasonably relied on Debtor's financial statements and borrowing base certificates in granting Debtor an extension, renewal, or refinancing of credit; (2) whether the bankruptcy court erred in finding Bank reasonably relied on Debtor's financial statements and borrowing base certificates; (3) whether the bankruptcy court erred in finding Debtor published his financial statements and borrowing base certificates with the intent to deceive Bank; (4) whether the bankruptcy court erred in finding Bank acted in a commercially

reasonable manner in its handling, inventorying, and disposing of Debtor's coins and inventory; (5) whether the bankruptcy court erred in finding Debtor's coins had a maximum value of $35,000 in the summer of 2005 and further finding Debtor's opinion of the value of his coins was overstated; (6) whether the bankruptcy court erred in finding Debtor testified when he bid a job, he treated the bid as an account receivable, even if he did not actually get the job, and when a customer paid all or part of the price in advance, Debtor did not necessarily credit the pre-payment against the account receivable, and further finding Debtor created mythical accounts receivable; and (7) whether the bankruptcy court had jurisdiction to enter a final judgment on Debtor's state law counterclaims.

With respect to the first issue, Debtor argues the bankruptcy court applied a "subjective justifiable reliance" standard in determining whether Bank reasonably relied on Debtor's written statements. We disagree. The bankruptcy court did not refer to "justifiable reliance" anywhere in its memorandum order. Instead, citing *Jacobus v. Binns* (*In re Binns*), 328 B.R. 126, 130 (B.A.P. 8th Cir. 2005), and *Northland Nat'l Bank v. Lindsey* (*In re Lindsey*), 443 B.R. 808, 813 (B.A.P. 8th Cir. 2011), the bankruptcy court stated–correctly–"[t]o except a debt from discharge under 11 U.S.C. § 523(a)(2)(B), a creditor must prove, by a preponderance of the evidence, that the debtor obtained money by (1) use of a statement in writing that was materially false; (2) that pertained to his or his business's financial condition; (3) *on which the plaintiff reasonably relied*; and (4) that the debtor made with the intent to deceive the plaintiff." (Emphasis added). Citing *First Nat'l Bank of Olathe v. Pontow* (*In re Pontow*), 111 F.3d 604, 610 (8th Cir. 1997), the bankruptcy court further stated–again correctly–"[r]*easonable reliance* is determined by looking at the totality of the circumstances." (Emphasis added). We are therefore satisfied the bankruptcy court applied the correct legal standard in determining whether Bank reasonably relied on Debtor's written statements.

-4-

With respect to the next five issues, which call into question many of the bankruptcy court's findings of fact, the record before us does not permit our consideration of Debtor's arguments. "Within 14 days after filing the notice of appeal . . . the appellant shall file with the clerk and serve on the appellee a designation of the items to be included in the record on appeal[.]" Fed.R.Bankr.P. 8006. Debtor did not file or serve such a designation. The record before us therefore comprises only the bankruptcy court's memorandum order and judgment and Debtor's notice of appeal. *Id.* Significantly, that record does not include an official transcript of the three-day trial before the bankruptcy court.[2] As we are thus unable to review the evidence presented to the bankruptcy court, we cannot conclude the bankruptcy court's findings of fact are clearly erroneous. *Marino v. Seeley* (*In re Marino*), 437 B.R. 676, 679 (B.A.P. 8th Cir. 2010) (citation therein).

Finally, with respect to the remaining issue, Debtor argues under *Stern v. Marshall*, ___ U.S. ___, 131 S. Ct. 2594 (2011), the bankruptcy court lacked *jurisdiction* to enter a final judgment on the state law counterclaims. While we do not agree the issue is one of jurisdiction, we acknowledge a bankruptcy court "lack[s] the *constitutional authority* to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Stern*, 131 S. Ct. at 2620 (emphasis added). In this case, however, Debtor not only consented to the bankruptcy court's entering a final judgment on the state law counterclaims, he lacks

---

[2]The uncaptioned document Debtor caused to be filed on October 11, 2012–less than two weeks before oral argument and more than three months after the deadline to file a designation of the items to be included in the record on appeal–is not an official transcript. In addition to not being designated by Debtor, that document was neither requested in compliance with Fed.R.Bankr.P. 8006 (the bankruptcy court's docket notes "[t]he parties did not request a transcript from the Court") nor completed and filed in compliance with Fed.R.Bankr.P. 8007 (the bankruptcy court's docket further notes "[t]he court's authorized transcribing agency has not certified this transcript").

standing to pursue an appeal from the bankruptcy court's final judgment on those counterclaims.

A bankruptcy court may enter a final judgment in a non-core, related proceeding, if the parties consent. 28 U.S.C. § 157(c)(2); *Abramowitz v. Palmer*, 999 F.2d 1274, 1279 (8th Cir. 1993). Such consent may be implied. *Abramowitz*, 999 F.2d at 1280.

State law counterclaims by the bankruptcy estate against persons filing claims against the bankruptcy estate are, of course, core proceedings, 28 U.S.C. § 157(b)(2)(C), albeit core proceedings in which a bankruptcy court lacks the constitutional authority to enter a final judgment. *Stern*, 131 S. Ct. at 2620. However, at least with respect to the issue of consent, this is a distinction without a difference.

> Following the genesis of the modern bankruptcy system, the Supreme Court clarified that Article III, § 1's guarantee of an independent and impartial adjudication by the federal judiciary of matters within the judicial power of the United States ... serves to protect primarily personal, rather than structural, interests. *Stern* further made clear that [28 U.S.C.] § 157 does not implicate questions of subject matter jurisdiction. Accordingly, as a personal right, Article III's guarantee of an impartial and independent federal adjudication is subject to waiver. And in fact, § 157(c)(2) expressly provides that bankruptcy courts may enter final judgments in non-core proceedings with the consent of all the parties to the proceeding.

> *If consent permits a non-Article III judge to decide finally a non-core proceeding, then it surely permits the same judge to decide a core proceeding in which he would, absent consent, be disentitled to enter final judgment.*

*Exec. Benefits Ins. Agency v. Arkison* (*In re Bellingham Ins. Agency, Inc.*), ___ F.3d ___, 2012 WL 6013836, at \*11 (9th Cir. Dec. 4, 2012) (citations and internal quotation marks omitted) (emphasis added). Again, such consent may be implied. *Id.* at \*11-14 (discussing and disposing of two potential objections to implied consent); *contra Waldman v. Stone*, 698 F.3d 910, 917-918 (6th Cir. 2012).

In this case, Debtor filed his amended answer and counterclaim in May 2008. While the Supreme Court did not decide *Stern* until June 2011, Debtor had ample opportunity thereafter–most notably at the trial in March 2012 or in his post-trial brief in April 2012–to object to the bankruptcy court's entering a final judgment on the state law counterclaims. He did not do so. Instead, he remained silent . . . until the bankruptcy court ruled against him. "[T]he consequences of a litigant . . . sandbagging the court–remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor–can be particularly severe." *Stern*, 131 S. Ct. at 2608 (citations and internal quotation marks omitted). We conclude Debtor impliedly consented to the bankruptcy court's entering a final judgment on the state law counterclaims. *Abramowitz*, 999 F.2d at 1280 (finding implied consent where "[a]t no time did either party object to the bankruptcy court's entering a final judgment"); *Bellingham*, 2012 WL 6013836, at \*14 (finding implied consent where a party fully litigated a matter "without so much as a peep" about the bankruptcy court's authority to enter a final judgment).

Even if we were to conclude otherwise, there is still the matter of Debtor's lack of standing to pursue an appeal from the bankruptcy court's final judgment on the state law counterclaims.

> The question of standing generally challenges whether a party is the proper one to request an adjudication of a particular issue. *Standing is an element of federal subject matter jurisdiction which cannot be waived and may be raised at any time by a party or by the court. . . .* The

Bankruptcy Code does not contain an explicit grant or limitation on appellate standing, yet we, like many other court[s], have looked to pre-code law to determine standing and have utilized the "person aggrieved" test. To have standing to appeal from an order of the bankruptcy court, the person aggrieved test requires that the appellant show a basis for arguing that the challenged action caused him cognizable injury, *i.e.*, that the party was aggrieved by the order. A person is aggrieved if he is directly and adversely affected pecuniarily by the order. This principle limits standing to persons with a financial stake in the bankruptcy court's order. If a party can show a reasonable possibility of a surplus after satisfying all priority and general unsecured claims, then that party has shown a pecuniary interest and has standing to appeal.

*Yates v. Forker* (*In re Patriot Co.*), 311 B.R. 71, 74 (B.A.P. 8th Cir. 2004) (citations omitted) (emphasis added). We conclude Debtor lacks standing, for two reasons.

First, the filing of Debtor's petition for relief under the bankruptcy code created a bankruptcy estate comprising, *inter alia*, all Debtor's legal and equitable interests in property on the petition date. 11 U.S.C. § 541(a). This included the state law counterclaims. *Vreugdenhil v. Hoekstra*, 773 F.2d 213, 214 (8th Cir. 1985) (citing *In re Smith*, 640 F.2d 888 (7th Cir. 1981), for the proposition that "choses in action owned by debtor at filing of bankruptcy petition are property of the estate"). "Authorities have in general agreed . . . that a debtor may not prosecute on his own a cause of action belonging to the estate unless that cause of action has been abandoned by the trustee." *Id.* at 215 (collecting cases). Debtor has not shown the chapter 7 trustee abandoned the state law counterclaims pursuant to 11 U.S.C. § 554(a), the chapter 7 trustee was ordered to abandon them pursuant to § 554(b), or they were deemed abandoned pursuant to § 554(c). The state law counterclaims thus remained property of the estate. 11 U.S.C. § 554(d).

That being so, Debtor could not pursue the state law counterclaims "without participation by the [chapter 7] trustee." *Vreugdenhil*, 773 F.2d at 216. While Debtor joined the chapter 7 trustee as a defendant and counterclaimant, we do not know whether and to what extent the chapter 7 trustee actually participated in Debtor's pursuit of the state law counterclaims. We do know, however, he has not participated in any way in the instant appeal. If Debtor could not pursue the state law counterclaims in the bankruptcy court without participation by the chapter 7 trustee, we can think of no reason why he should be able to continue to pursue them on appeal without participation by the chapter 7 trustee.

Second, Debtor is not a "person aggrieved" by the bankruptcy court's final judgment on the state law counterclaims. At oral argument, Debtor argued if he recovered more on the state law counterclaims than the chapter 7 trustee needed to pay timely filed proofs of claim, he would be entitled to the surplus. We disagree. Before Debtor would be entitled to any surplus, the chapter 7 trustee would have to pay all priority claims, all allowed and timely-filed unsecured claims, all allowed but tardily-filed unsecured claims, and all allowed claims for a fine, penalty, or forfeiture or for multiple, exemplary, or punitive damages that do not represent actual pecuniary loss, in full, with interest at the legal rate from September 11, 2005, the date on which Debtor filed his petition for relief. 11 U.S.C. § 726(a). The limited record on appeal affords us no basis for determining either the likely recovery on the state law counterclaims or the amount the chapter 7 trustee would have to pay the various claim holders described above. Debtor has not shown "a reasonable possibility of a surplus after satisfying all priority and general unsecured claims." *Patriot Co.*, 311 B.R. at 74. Consequently, Debtor does not have a pecuniary interest that would give him standing to appeal the bankruptcy court's final judgment on the state law counterclaims. *Id.*

## CONCLUSION

For the foregoing reasons, we affirm the bankruptcy court's judgment determining the debt Debtor owed to Bank was excepted from discharge under 11 U.S.C. § 523(a)(2)(B) and denying any recovery on Debtor's counterclaim.

_____