# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1078

_____

David J. Jackson; Linda R. Bittner; Lisa Stone; Lettie Hodges; Daniel Wilson;
Brenda McCollum; Robin Ramirez,

*Plaintiffs - Appellants*,

v.

Old EPT, LLC, also known as EaglePicher Technologies, LLC,

*Defendant - Appellee.*

_____

Appeal from United States District Court
for the Western District of Missouri - Joplin

_____

Submitted: November 17, 2015
Filed: August 23, 2016

_____

Before COLLOTON, GRUENDER, and SHEPHERD, Circuit Judges.

_____

COLLOTON, Circuit Judge.

This appeal arises from an action brought by hourly production employees against their employer, EaglePicher Technologies, LLC, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and the Missouri Minimum Wage Law, Mo. Rev. Stat. §§ 290.500-290.530. The employees sought payment for time spent on various tasks, including the donning and doffing of work clothing and

protective gear, walking to and from production lines, and waiting in line to clock in and out for work. The district court[1] granted summary judgment for EaglePicher, and the employees appeal. We affirm.

I.

EaglePicher operates a battery manufacturing facility in Joplin, Missouri. The company employs hourly production workers at the Joplin facility. Since at least 1967, those employees have been represented by a union, presently known as the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Union, Local 812. The plaintiff-employees are all members of the union.

The employees donned either coveralls or smocks, along with safety glasses, while working at the facility. At times, they also wore various forms of personal protective equipment to perform their job duties. Beginning in 1989, collective bargaining agreements between the union and EaglePicher included language about employees changing into and out of work clothing outside of the scheduled work period. It is undisputed that the language consistently was interpreted as excluding from compensable time the donning and doffing of work clothing outside of the regular paid shift.

The last signed collective bargaining agreement between EaglePicher and the union commenced in May 2004 and expired on May 2, 2008. In 2008, the company and the union attempted to negotiate a successor collective bargaining agreement. During those negotiations, the union made no proposal regarding compensation for the donning or doffing of work clothes. In a letter dated May 28, 2008, EaglePicher

---

[1]The Honorable Beth Phillips, United States District Judge for the Western District of Missouri.

declared that the negotiations had "been at an impasse in bargaining for quite some time." The company wrote that, effective June 2, 2008, it would unilaterally implement its "Last, Best and Final Offer" as the governing terms and conditions of employment for the members of the union.

EaglePicher proceeded to implement those terms. The union did not declare a strike, and the General Counsel of the National Labor Relations Board advised in a letter that EaglePicher was privileged to implement its last, best, and final offer. The implemented terms contained identical language to the 1989 collective bargaining agreement about the donning and doffing of work clothing.

In subsequent negotiations in 2011, the union provided EaglePicher with a list of proposals that the union sought to include in a new collective bargaining agreement. Among those proposed terms was a subsection providing that "[e]mployees who are required to wear personal protective equipment or clothing will be allowed fifteen (15) minutes with pay at the beginning of each shift for donning of such equipment or clothing and fifteen (15) minutes with pay just prior to the end of each shift for doffing of such equipment or clothing." EaglePicher rejected this proposed language, and the union withdrew the proposed subsection from its list of bargaining proposals. In negotiations the following year, the union did not propose payment for time spent donning and doffing. The parties have not negotiated and signed a written collective bargaining agreement since the expiration of the 2004 agreement in May 2008.

Current and former hourly production employees at the Joplin facility brought this action, alleging that EaglePicher failed to compensate them for straight time and overtime. They claimed, as relevant to this appeal, that EaglePicher violated the FLSA by failing to compensate them fully for time spent donning and doffing work clothing and protective equipment.

The district court ultimately concluded that none of the time at issue was compensable, because it was excluded from the definition of "hours worked" under the FLSA. *See* 29 U.S.C. § 203(*o*); *Adair v. ConAgra Foods, Inc.*, 728 F.3d 849 (8th Cir. 2013). The court thus granted summary judgment for EaglePicher, and the employees appeal. We review the district court's grant of summary judgment *de novo*. *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993).

II.

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The definition of "hours worked" for purposes of § 207 excludes "any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee." *Id.* § 203(*o*).

The employees argue that the district court erred in its treatment of time spent donning and doffing. They emphasize that § 203(*o*) applies only to time that is excluded from measured working time "under a bona fide collective bargaining agreement." The employees assert that because the 2004 collective bargaining agreement expired before the period at issue, there is no bona fide collective bargaining agreement to support the employer's defense under § 203(*o*).

Under the law of this circuit, when an employer imposes unilateral terms and conditions after the parties reach a bargaining impasse, the continuation of work by a company's employees does not, by itself, establish the existence of an interim labor agreement between the parties. *United Paperworkers Int'l Union, AFL-CIO, Local*

-4-

*274 v. Champion Int'l Corp.*, 81 F.3d 798, 803-04 (8th Cir. 1996). An interim labor agreement may exist, however, if an employer makes an offer and the union accepts that offer by means "over and above the fact that union members continued to work." *Id.* "[E]vidence of offer and acceptance must relate to the union-employer bargaining relationship" to prove that a contract was formed. *Id.* The union may accept the offer expressly or by conduct. An acceptance need not be formal, "because an interim agreement is by definition informal." *Id.*

The undisputed facts here show the existence of an interim labor agreement. EaglePicher's implementation of its last, best, and final offer was an offer to form an interim labor agreement, and the union so understood it. The union accepted the offer by continuing to work without striking and taking further actions relating to the bargaining relationship: Union members filed 182 grievances alleging contractual violations since the last, best, and final offer terms were implemented. *Cf. McNealy v. Caterpillar, Inc.*, 139 F.3d 1113, 1122 n.7 (7th Cir. 1998).

The employees claim that the union's acceptance of the terms extends only to the grievance procedures. But the record shows that the union grieved thirty-one disputes seeking to enforce the implemented terms pertaining to wages or hours worked. This undisputed evidence shows that the agreement also encompassed terms involving wages and hours. None of these grievances, moreover, challenged the absence of pay for donning and doffing.

A union representative also referred to "the existing contract" when notifying EaglePicher about a proposed negotiating conference, and the union dropped its request to be paid for donning and doffing after raising it once during the six-year period. In a separate legal action to compel arbitration, the union asserted that "an implied-in-fact contract" exists between the union and EaglePicher, and sought enforcement of certain implemented terms under that implied-in-fact contract. These actions by the union, taken together, show that the union acted beyond merely

allowing employees to continue to work after an impasse. They establish acceptance of the offer and the existence of an interim labor agreement.

The employees assert that even if the parties have an interim labor agreement, there is no "bona fide collective bargaining agreement" within the meaning of § 203(*o*). We see no meaningful difference. An offer made through the employer's unilateral implementation of terms, if accepted by the union, can be the foundation for an "implied-in-fact collective bargaining agreement." *McNealy*, 139 F.3d at 1121-23 & n.8; *see Luden's Inc. v. Local Union No. 6 of Bakery, Confectionery & Tobacco Workers' Int'l Union*, 28 F.3d 347, 360-61 (3d Cir. 1994). Although signed contracts play an important role in the field of collective bargaining, *see H.J. Heinz Co. v. NLRB*, 311 U.S. 514, 524-25 (1941), "it is well established that a collective bargaining agreement is not dependent on the reduction to writing of the parties' intention to be bound." *Twin City Pipe Trades Serv. Ass'n v. Frank O'Laughlin Plumbing & Heating Co.*, 759 F.3d 881, 885 (8th Cir. 2014) (quoting *Capitol-Husting Co. v. NLRB*, 671 F.2d 237, 243 (7th Cir. 1982)); *see also* 29 U.S.C. § 158(d) (obligation to bargain includes execution of a written contract incorporating agreement reached "if requested by either party"); *NLRB v. Haberman Constr. Co.*, 641 F.2d 351, 355-56 & n.1 (5th Cir. 1981) (en banc). The interim labor agreement here was an implied-in-fact contract between the employer and the union regulating employment conditions, wages, benefits, and grievances. It was made in good faith, without fraud or deceit. As such, it met the ordinary definitions of "bona fide" and "collective bargaining agreement." *Black's Law Dictionary* 199, 299 (9th ed. 2009). Nothing about § 203(*o*) leads us to believe that Congress employed different meanings of those terms.

There also is no genuine dispute that donning and doffing time was excluded from measured working time by "custom or practice" under the implied-in-fact agreement. The phrase "custom or practice under a bona fide collective bargaining agreement" simply restates the "well-established principle of labor law that a

-6-

particular custom or practice can become an implied term of a labor agreement through a prolonged period of acquiescence." *Turner v. City of Philadelphia*, 262 F.3d 222, 226 (3d Cir. 2001). Before the present implied-in-fact agreement, previous collective bargaining agreements consistently were interpreted as excluding pre- and post-shift donning and doffing time from compensable working time. The union did not object to this interpretation or suggest payment for that time until several years after the last formal collective bargaining agreement expired. It therefore acquiesced in this implied term of the labor agreement. *See Bhd. Ry. Carmen v. Mo. Pac. R.R. Co.*, 944 F.2d 1422, 1429 (8th Cir. 1991); *see also Turner*, 262 F.3d at 226. That the union once in 2011 proposed compensation for donning and doffing before abandoning the suggestion does not create a genuine issue of fact about the existence of a custom or practice. *See Luden's Inc.*, 28 F.3d at 356-57 & nn.15-16, 361, 364.

For these reasons, we conclude that there was an implied-in-fact bona fide collective-bargaining agreement between EaglePicher and the union. A custom or practice under that agreement excluded time spent donning and doffing work clothing from measured working time. The district court thus correctly ruled that § 203(*o*) excluded that donning and doffing time from "hours worked" for which compensation was due. The judgment of the district court is affirmed.

———————————————